IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| § | |
| IN RE BP SHAREHOLDER DERIVATIVE § | MDL NO. 2185 |
| LITIGATION § | |
| § | Case No. 4:10-cv-03447 |
| § | |
| § | |
| § | |
| In Re: BP P.L.C. SECURITIES § | Civil Action No. 4:10-md-2185 |
| LITIGATION § | |
| § | HON. KEITH P. ELLISON |
| § | |
| § | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR
MOTION TO DISMISS THE VERIFIED CONSOLIDATED
AMENDED SHAREHOLDER DERIVATIVE COMPLAINT**

OF COUNSEL:

Daryl A. Libow (pro hac vice)
Bruce W. Hickey
SULLIVAN & CROMWELL LLP
1701 Pennsylvania Avenue, N.W.
Washington, D.C.  20006
Telephone: (202) 956-7500
libowd@sullcrom.com
hickeyb@sullcrom.com

Richard C. Pepperman, II (pro hac vice)
Marc De Leeuw (pro hac vice)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Telephone: (212) 558-4000
peppermanr@sullcrom.com
deleeuwm@sullcrom.com

Thomas W. Taylor
Texas State Bar No. 19723875
ANDREWS KURTH LLP
600 Travis, Suite 4200
Houston, Texas 77002
Telephone: (713) 220-4200
Facsimile: (713) 220-4285
ttaylor@andrewskurth.com

*Attorney-in-charge for Nominal Defendant
BP p.l.c. and Defendants Iain C. Conn, Robert
W. Dudley, Byron E. Grote, Anthony B.
Hayward, Andy G. Inglis, Antony Burgmans,
Cynthia B. Carroll, William M. Castell,
George David, Erroll B. Davis, Jr., Douglas J.
Flint, DeAnne S. Julius, Ian M.G. Prosser,
Peter Sutherland, Carl-Henric Svanberg, H.
Lamar McKay, and Robert A. Malone*

# TABLE OF CONTENTS

**Page**

NATURE AND STAGE OF THE PROCEEDING.................................................................1

ISSUES TO BE RULED UPON BY THE COURT...........................................................2

SUMMARY OF ARGUMENT .........................................................................................2

BACKGROUND ..............................................................................................................5

ARGUMENT ....................................................................................................................6

    I.     PLAINTIFFS LACK STANDING TO PURSUE THESE DERIVATIVE CLAIMS UNDER GOVERNING U.K. LAW. ................................................6

         A.    The Law of England and Wales Applies to This Action. .........................7

         B.    Plaintiffs Did Not Obtain Pre-Suit Authorization from the English High Court as Required by the Companies Act....................................10

    II.    THE COURTS OF ENGLAND ARE A MORE SUITABLE FORUM FOR THIS DERIVATIVE LITIGATION. ........................................................14

         A.    The Complaint Should Be Dismissed on *Forum Non Conveniens* Grounds.................................................................................................14

         B.    Adjudicating Issues of Unsettled English Law Would Violate Principles of International Comity.........................................................22

    III.    TO THE EXTENT REQUIRED, PLAINTIFFS FAIL ADEQUATELY TO PLEAD DEMAND FUTILITY...................................................................24

         A.    Demand Futility Must Be Pled With Particularity.................................25

         B.    Plaintiffs Have Not Alleged Specific Facts Demonstrating a Substantial Likelihood of Director Liability for Supposed Oversight Failures.................................................................................26

         C.    Plaintiffs Fail to Allege Particularized Facts Specific to Each Director Defendant Demonstrating That a Majority of the Board Is Not Independent and Disinterested.........................................................28

    IV.    PLAINTIFFS HAVE FAILED ADEQUATELY TO ALLEGE THAT THIS COURT HAS PERSONAL JURISDICTION OVER THE INDIVIDUAL DEFENDANTS.........................................................................31

         A.    Plaintiffs Fail to Allege Facts Sufficient to Establish General Jurisdiction Over Any Individual Defendant.........................................33

         B.    Plaintiffs Fail to Allege Facts Sufficient to Establish Specific Jurisdiction Over Any Individual Defendant.........................................33

CONCLUSION.................................................................................................................35

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*American Southern Insurance Co.* v. *Buckley*,
No. 1:09-CV-723, 2010 U.S. Dist. LEXIS 102668 (E.D. Tex. 2010) .......................................7

*Aronson* v. *Lewis*,
473 A.2d 805 (Del. 1984) ..............................................................................................26

*Asahi Metal Industries Co.* v. *Superior Court of California*,
480 U.S. 102 (1987)......................................................................................................34

*Atkins* v. *Hibernia Corp.*,
182 F.3d 320 (5th Cir. 1999) ........................................................................................26

*Batchelder* v. *Kawamoto*,
147 F.3d 915 (9th Cir. 1998) ...........................................................................................8

*Boudreaux* v. *Ford Motor Co.*,
533 So. 2d 1213 (La. 1988) ...........................................................................................23

*Brehm* v. *Eisner*,
746 A.2d 244 (Del. 2000) ..............................................................................................26

*City of Harper Woods Employees' Retirement System* v. *Olver*,
589 F.3d 1292 (D.C. Cir. 2009) .....................................................................................10

*Colina* v. *One E. River Place Realty Co.*,
No. 99-civ-5173, 2000 U.S. Dist. LEXIS 11728 (S.D.N.Y. Aug. 17, 2000)...........................6

*Dalton* v. *R & W Marine, Inc.*,
897 F.2d 1359 (5th Cir. 1990) .......................................................................................34

*Denmark* v. *Tzimas*,
871 F. Supp. 261 (E.D. La. 1994)...................................................................................22

*Desimone* v. *Barrows*,
924 A.2d 908 (Del. Ch. 2007)..................................................................................27, 29

*Edgar* v. *MITE Corp.*,
457 U.S. 624 (1982).........................................................................................................8

*Empagran, S.A.* v. *F. Hoffman-La Roche Ltd.*,
453 F. Supp. 2d 1 (D.D.C. 2006) ...................................................................................23

*Felch* v. *Transportes Lar-Mex SA de CV,*
    92 F.3d 320 (5th Cir. 1996) ...........................................................................34

*First Guaranty Bank of Hammond* v. *Attorneys Liability Assurance Society, Ltd.,*
    515 So. 2d 1080 (La. 1987) ...........................................................................32

*Foss* v. *Harbottle,*
    (1843) 2 Hare 461 (Eng.) ...............................................................................10

*Gilstrap* v. *Radianz Ltd.,*
    443 F. Supp. 2d 474 (S.D.N.Y. 2006) ...........................................................21

*Goldman* v. *Northrop Corp.,*
    603 F.2d 106 (9th Cir. 1979) .........................................................................10

*Guitierrez* v. *Logan,*
    No. H-02-Civ-1812, 2005 WL 2121554 (S.D. Tex. Aug. 31, 2005)...............25, 26

*Gulf Oil Corp.* v. *Gilbert,*
    330 U.S. 501 (1947).........................................................................18, 20, 21

*Ham* v. *La Cienega Music Co.,*
    4 F.3d 413 (5th Cir. 1993) .............................................................................34

*Hausman* v. *Buckley,*
    299 F.2d 696 (2d Cir. 1962).....................................................................8, 9, 13

*Hilton* v. *Guyot,*
    159 U.S. 113 (1895).......................................................................................23

*Hollis* v. *Hill,*
    232 F.3d 460 (5th Cir. 2000) ...........................................................................8

*In re Baxter International, Inc. Shareholder Litigation,*
    654 A.2d 1268 (Del. Ch. 1995)......................................................................26

*In re BP p.l.c. Derivative Litigation,*
    507 F. Supp. 2d 302 (S.D.N.Y. 2007)............................................................10

*In re BP p.l.c. Derivative Litigation,*
    No. 3AN-06-11929CI (Alaska Super. Ct. May 7, 2008) ....................................5, 6

*In re Caremark International Inc. Derivative Litigation,*
    698 A.2d 959 (Del. Ch. 1996).......................................................................27

*In re Citigroup Inc. Shareholder Derivative Litigation,*
    964 A.2d 106 (Del. Ch. 2009)..............................................................27, 28, 29, 31

*In re Dow Chemical Co. Derivative Litigation,*
   No. 4349-CC, 2010 WL 66769 (Del. Ch. Jan. 11, 2010) ......................................................30

*In re Enron Corp. Securities, Derivative & "ERISA" Litigation,*
   511 F. Supp. 2d 742 (S.D. Tex. 2005) .................................................................................32

*In re Factor VIII or IX Concentrate Blood Products Litigation,*
   484 F.3d 951 (7th Cir. 2007) ..............................................................................................15

*In re Goldman Sachs Mutual Funds,*
   No. 04-Civ-2567(NRB), 2006 WL 126772 (S.D.N.Y. Jan. 17, 2006) ..................................30

*In re Intel Corp. Derivative Litigation,*
   621 F. Supp. 2d 165 (D. Del. 2009) .....................................................................................31

*In re ITT Corp. Derivative Litigation,*
   653 F. Supp. 2d 453 (S.D.N.Y. 2009)..............................................................................29, 30

*In re Parmalat Securities Litigation,*
   659 F. Supp. 2d 504 (S.D.N.Y. 2009)....................................................................................7

*In re Schmitz,*
   285 S.W.3d 451 (Tex. 2009)................................................................................................25

*In re Tyco International Ltd.,*
   340 F. Supp. 2d 94 (D.N.H. 2004)........................................................................................10

*Information Resolution, Inc.* v. *The Dun & Bradstreet Corp.,*
   127 F. Supp. 2d 411 (S.D.N.Y. 2000)...................................................................................23

*Johnston* v. *Multidata Systems International Corp.,*
   523 F.3d 602 (5th Cir. 2008) ..........................................................................................31, 33

*Kamen* v. *Kemper Financial Services, Inc.,*
   908 F.2d 1338 (7th Cir. 1990) .............................................................................................26

*Kamen* v. *Kemper Financial Services, Inc.,*
   500 U.S. 90 (1991)........................................................................................................22, 25

*Kane Enterprises* v. *MacGregor (US), Inc.,*
   322 F.3d 371 (5th Cir. 2003) ................................................................................................7

*Karim* v. *Finch Shipping Co.,*
   265 F.3d 258 (5th Cir. 2001) ..........................................................................................14, 15

*Koster* v. *(American) Lumbermens Mutual Casualty Co.,*
   330 U.S. 518 (1947)............................................................................................... *passim*

*Latshaw* v. *Johnston*,
    167 F.3d 208 (5th Cir. 1999) ...................................................................................32

*Levine* v. *Milton*,
    219 A.2d 145 (Del. Ch. 1966)....................................................................................9

*Livermore* v. *Engles*,
    No. 3-10-CV-0882-BD, 2010 WL 3583999 (N.D. Tex. Sept. 13, 2010) .........................29, 30

*MCA, Inc.* v. *United States*,
    685 F.2d 1099 (9th Cir. 1982) ...................................................................................3

*McGuffie* v. *Mead Corp.*,
    733 F. Supp. 2d 592 (E.D. Pa. 2010) ...........................................................................7

*Midwestern Teamsters Pension Trust Fund* v. *Deaton*,
    No. H-08-1809, 2009 U.S. Dist. LEXIS 50521 (S.D. Tex. May 7, 2009).............................24

*Moonlight Investments, Ltd.* v. *John*,
    192 S.W.3d 890 (Tex. App. 2006)..............................................................................25

*Neinast* v. *Texas*,
    217 F.3d 275 (5th Cir. 2000) .....................................................................................7

*Pan Pacific Retail Properties, Inc.* v. *Gulf Insurance Co.*,
    No. 03-CV-679-WQH, 2004 U.S. Dist. LEXIS 28534 (S.D. Cal. July 14, 2004) ...................6

*Panda Brandywine Corp.* v. *Potomac Electric Power Co.*,
    253 F.3d 865 (5th Cir. 2001) ...............................................................................31, 32

*Pedroli ex rel. Microtune, Inc.* v. *Bartek*,
    564 F. Supp. 2d 683 (E.D. Tex. 2008) ........................................................................29

*Piper Aircraft Co.* v. *Reyno*,
    454 U.S. 235 (1981)......................................................................................... *passim*

*Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust* v. *Lundgren*,
    579 F. Supp. 2d 520 (S.D.N.Y. 2008)........................................................................30

*Rales* v. *Blasband*,
    634 A.2d 927 (Del. 1993) ........................................................................................26

*Ramming* v. *United States*,
    281 F.3d 158 (5th Cir. 2001) .....................................................................................7

*Rios* v. *City of Del Rio, Texas*,
    444 F.3d 417 (5th Cir. 2006) .....................................................................................7

*Robinson* v. *TCI/US West Communications Inc.*,
   117 F.3d 900 (5th Cir. 1997) ...................................................................15

*Saqui* v. *Pride Central America, LLC*,
   595 F.3d 206 (5th Cir. 2010) ...................................................16, 18, 20

*Scottish Air International, Inc.* v. *British Caledonian Group, p.l.c.*,
   81 F.3d 1224 (2d Cir. 1996)...........................................................18, 21

*Seghers* v. *Thompson*,
   No. 06-CIV-308-RMB-KNF, 2006 WL 2807203 (S.D.N.Y. Sept. 27, 2006).......................10

*Shaffer* v. *Heitner*,
   433 U.S. 186 (1977)..........................................................................8

*Sinochem International Co.* v. *Malaysia International Shipping Corp.*,
   549 U.S. 422 (2007)..........................................................................17

*Societe Nationale Industrielle Aerospatiale* v. *United States District Court for the
   Southern District of Iowa*, 482 U.S. 522 (1987) ......................................22

*State ex rel. Watkins* v. *North American Land & Timber Co.*,
   31 So. 172 (La. 1902) ........................................................................8

*Stone ex rel. AmSouth Bancorporation* v. *Ritter*,
   911 A.2d 362 (Del. 2006) ...............................................................27, 28

*Syndicate 420 at Lloyd's London* v. *Early American Insurance Co.*,
   796 F.2d 821 (5th Cir. 1986) ...................................................... *passim*

*Taylor* v. *Books A Million, Inc.*,
   296 F.3d 376 (5th Cir. 2002) ...............................................................7

*Torch Liquidating Trust ex rel. Bridge Associates LLC* v. *Stockstill*,
   561 F.3d 377 (5th Cir. 2009) ...............................................................7

*VantagePoint Venture Partners 1996* v. *Examen, Inc.*,
   871 A.2d 1108 (Del. 2005) .................................................................8

*Vaughn* v. *LJ International, Inc.*,
   94 Cal. Rptr. 3d 166 (Cal. Ct. App. 2009) ...................................9, 13, 14

*Warth* v. *Seldin*,
   422 U.S. 490 (1975)..........................................................................6

*Windt* v. *Qwest Communications International, Inc.*,
   529 F.3d 183 (3d Cir. 2008)...............................................................19

*Winn* v. *Schafer*,
499 F. Supp. 2d 390 (S.D.N.Y. 2007).........................................................6

*Wiwa* v. *Royal Dutch Petroleum Co.*,
226 F.3d 88 (2d Cir. 2000)...................................................................15

*Wood* v. *Baum*,
953 A.2d 136 (Del. 2008) ....................................................................26

*World-Wide Volkswagen Corp.* v. *Woodson*,
444 U.S. 286 (1980)............................................................................34

**STATUTES AND RULES**

28 U.S.C. § 1332............................................................................................7

28 U.S.C. § 1407.......................................................................................15, 32

Delaware Chancery Court Rule 23.1 ...........................................................26

Federal Rule of Civil Procedure 12(b)...........................................1, 6, 7, 31

Federal Rule of Civil Procedure 23.1 ..................................................... *passim*

Federal Rule of Civil Procedure 44.1 ...........................................................3

Louisiana Code Civil Procedure article 615 ...........................................25, 26

Texas Business Organizations Code § 1.102 (Vernon 2006) .........................8

Texas Business Organizations Code § 21.553 (Vernon 2006) ....................25

United Kingdom Companies Act, 2006................................................. *passim*

**OTHER AUTHORITIES**

Glenn G. Morris & Wendell H. Holmes, Louisiana Civil Law Treatise, *Business Organizations* (2010) ...............................................................26

Kurt A. Goehre, *Is the Demand Requirement Obsolete? How the United Kingdom Modernized Its Shareholder Derivative Procedure and What the United States Can Learn From It*, 28 Wisconsin International Law Journal 140 (2010)....................................24

Andrew Keay & Joan Loughrey, *Something Old, Something New, Something Borrowed: An Analysis of the New Derivative Action Under the Companies Act 2006*, 124 Law Quarterly Review 469 (2008) ...............................................................23

Joseph Lee, *Shareholders' Derivative Claims Under the Companies Act 2006: Market Mechanism or Asymmetric Paternalism?*, 36(2) International Company & Commercial Law Review 188 (2007)....................................................................................23

Pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(6) and 23.1, nominal defendant BP p.l.c. ("BP") and all of the individual defendants[1] (collectively, "Defendants") respectfully submit this memorandum in support of their motion to dismiss the Verified Consolidated Amended Shareholder Derivative Complaint ("Complaint" or "Compl.").

## NATURE AND STAGE OF THE PROCEEDING

This is a purported shareholder derivative action brought under U.K. law on behalf of nominal defendant BP, a company organized under the laws of England and Wales and headquartered in London.  Through this derivative action, several BP shareholders seek to assert claims for breach of fiduciary duty under English law on behalf of BP against various current and former officers and directors of BP and one of its Delaware-incorporated subsidiaries.  In suing derivatively, plaintiffs do *not* seek to recover damages from BP on behalf of Gulf Coast residents or BP shareholders, but rather seek to assert claims on behalf of BP to recover money for the company.

This case originated in the Eastern District of Louisiana.  On May 11, 2010, plaintiff John P. Miles filed the first of several derivative actions arising out of the Deepwater Horizon incident.  *See Miles* v. *Hayward*, No. 2:10-cv-1446 (E.D. La.).  On September 10, 2010, three derivative actions—filed by plaintiffs Miles, *id.*, Cody A. Nedved, *Nedved* v. *Hayward*, No. 2:10-cv-01933 (E.D. La.), and Victor Skomedal, *Skomedal* v. *Hayward*, No. 2:10-cv-01964 (E.D. La.)—were transferred to this Court by the Judicial Panel on Multidistrict Litigation for coordinated or consolidated pretrial proceedings as part of MDL 2185.  (Dkt. No. 62.)  On October 12, 2010, this Court consolidated the *Miles*, *Skomedal* and *Nedved* actions for all

---

[1]     The individual defendants named in the Complaint are Iain C. Conn, Robert W. Dudley, Byron E. Grote, Anthony B. Hayward, Andy G. Inglis, Antony Burgmans, Cynthia B. Carroll, William M. Castell, George David, Erroll B. Davis, Jr., Douglas J. Flint, DeAnne S. Julius, Ian M.G. Prosser, Peter Sutherland, Carl-Henric Svanberg, H. Lamar McKay and Robert A. Malone.  (Compl. ¶¶ 31-49.)

purposes into the above-captioned action, and ordered plaintiffs to file a consolidated amended

complaint.  (Dkt. No. 65.)[2]  The Complaint was filed on February 4, 2011.

## ISSUES TO BE RULED UPON BY THE COURT

This motion presents the following issues to be ruled upon by the Court:

1.   Whether plaintiffs, alleged shareholders of a company incorporated under the laws of England and Wales, have standing to sue derivatively on behalf of that company, where U.K. law—which governs this action under the "internal affairs" doctrine— requires a derivative plaintiff first to obtain permission to sue from the English High Court, and where plaintiffs have neither sought nor obtained such permission.

2.   Alternatively, whether under the doctrines of *forum non conveniens* and comity this Court should refrain from exercising jurisdiction over this action in deference to the English High Court, which is the more suitable forum for this derivative action brought under a recently enacted U.K. statute on behalf of an English company against numerous English director defendants and other foreign nationals.

3.   Alternatively, in the event U.K. law does not govern, whether plaintiffs have met the threshold demand requirement to assert derivative claims on behalf of BP, where plaintiffs have failed to make a demand on BP's Board of Directors to bring this action or to allege any particularized facts excusing them from making such a demand.

4.   Alternatively, whether this Court may exercise personal jurisdiction over any of the individual defendants, where plaintiffs have failed to allege *any* specific contacts between the individual defendants and the State of Louisiana or any facts demonstrating that the individual defendants' alleged breaches of fiduciary duty occurred in Louisiana.

## SUMMARY OF ARGUMENT

The Complaint should be dismissed for four independent reasons.

*First*, plaintiffs lack standing to sue derivatively on behalf of BP.  Because BP is

incorporated under the laws of England and Wales, well-established choice-of-law principles

---

[2]     Since the Deepwater Horizon explosion in April 2010, several derivative actions have also been filed in a number of different state courts, all of which similarly seek to assert claims on behalf of BP. (Declaration of Thomas W. Taylor, dated March 21, 2011 ("Taylor Decl.") ¶ 5.)  Plaintiffs in all pending state derivative actions, except in Alaska, have agreed to stay their actions in favor of this litigation, and some are named as plaintiffs in this case.  (Compl. ¶ 29.)  Defendants in the Alaska derivative action have moved to stay that action in favor of this litigation, and to dismiss on grounds similar to those set forth in this motion.

require the application of English law to this action.[3]  Indeed, the Complaint concedes that the

U.K. Companies Act 2006 (the "Companies Act") governs both plaintiffs' ability to sue

derivatively on behalf of BP and the duties BP's officers and directors owe the company.  As

explained in the accompanying Declaration of Martin Moore QC, and as the Companies Act

itself makes clear, a shareholder of a company organized under English law cannot pursue a

derivative claim on behalf of that company without first obtaining judicial permission from the

English High Court.  Plaintiffs' failure to plead that they have obtained or even sought such

permission requires dismissal of this action.

  *Second*, the English High Court is a more suitable alternative forum for this

derivative litigation brought under English law on behalf of an English company against

numerous English director defendants and other foreign nationals.  The Court thus should decline

to adjudicate plaintiffs' claims under the doctrine of *forum non conveniens*.  The alleged

breaches of fiduciary duty that are the focus of this action involve the Board of Directors of an

English corporation headquartered in London and are governed by English law.  As a result,

most of the evidence is almost certain to be located in London, and England has the greatest

interest in this action.  The convenience of the parties and witnesses, as well as the ends of

justice, likewise favor an English forum.  In the alternative, this Court should decline jurisdiction

under principles of international comity.  The controlling English law, the Companies Act, is a

relatively new and complex statute.  The English High Court should be given the first

opportunity to interpret this statute and apply this still-developing body of English corporate law

---

[3]  Defendants hereby provide notice pursuant to Federal Rule of Civil Procedure 44.1 of their intent
to rely upon foreign law in this action.  *See MCA, Inc.* v. *United States*, 685 F.2d 1099, 1104 (9th Cir.
1982) ("Under Fed. R. Civ. P. 44.1, when the parties have given written notice of intent to raise an issue
of foreign law, a federal court may take judicial notice of the laws of a foreign country.").  Copies of all
cited U.K. legal materials are being provided to the Court with the accompanying Declaration of Martin
Moore QC dated March 17, 2011 ("Moore Decl.").

to a high-profile case involving an important English company.

*Third*, even if English law did not control here—which it undoubtedly does—the Complaint still should be dismissed for failure to plead particularized facts excusing plaintiffs' admitted failure to make a demand on BP's Board of Directors to pursue these claims prior to commencing this action.  Both Federal Rule of Civil Procedure 23.1 and relevant state law require shareholders seeking to bring a derivative action first to make a demand on the board of directors or to plead *particularized* facts demonstrating why such a demand would have been futile.  Plaintiffs have not come close to satisfying this futility standard, asserting only in conclusory terms that demand is excused because the individual defendants otherwise would be asked to sue themselves and a majority of BP's Board is not disinterested and independent.  Courts routinely reject such conclusory allegations as insufficient to excuse demand.

*Fourth*, plaintiffs have failed to plead any facts justifying the exercise of personal jurisdiction over any of the individual defendants.  Indeed, plaintiffs have made no attempt to carry their burden of pleading facts that give rise to a *prima facie* case that personal jurisdiction exists over each defendant.  This Court must assess *in personam* jurisdiction from the perspective of the federal court from which the case was transferred.  Plaintiffs thus must demonstrate that the exercise of personal jurisdiction would satisfy Louisiana's long-arm statute and the dictates of due process as to each individual defendant.  None of the defendants is alleged to be a Louisiana resident or to have committed a single act in Louisiana, thus precluding the exercise of general jurisdiction.  Nor is there a basis to exercise specific jurisdiction over these defendants.  Plaintiffs do not allege that the conduct that gives rise to this action—the alleged breaches of fiduciary duties under English law—occurred in Louisiana.

## BACKGROUND

Plaintiffs allege that they are all holders of either BP ordinary shares or American Depositary Shares. (Compl. ¶¶ 26-29.) They purport to bring this action derivatively on behalf of BP against fifteen current and former members of BP's Board of Directors, as well as the current chairman of a U.S.-based subsidiary of BP and his predecessor. (*Id.* ¶¶ 30, 31-50, 221.) In suing derivatively, plaintiffs seek to recover damages and other relief for the benefit of the company based on the individual defendants' alleged breaches of fiduciary duty. Plaintiffs acknowledge that BP is "incorporated under the laws of England and Wales." (*Id.* ¶ 30.)

Plaintiffs' claims for breach of fiduciary duty are based on a series of events stretching back over two decades and culminating in the April 2010 explosion on the Deepwater Horizon oil rig and the subsequent oil spill in the Gulf of Mexico. (*Id.* ¶¶ 4-7, 183-95.) Plaintiffs allege that prior to the Deepwater Horizon explosion, "Defendants learned about numerous dangerous incidents, accidents and near-misses involving BP's oil exploration, refinery and pipeline operations." (*Id.* ¶ 7.) Plaintiffs spend dozens of pages quoting and paraphrasing newspaper articles, books, and public reports concerning these alleged events— allegations to which BP will respond at the appropriate time and in the appropriate forum. It is worth noting, however, that many of these events pre-date—in some cases, by *decades*—the appointment of all of the directors and officers named as defendants in this case, most of whom were appointed in the last five or six years. (*See*, *e.g.*, *id.* ¶¶ 32, 35, 40.) And virtually all of these events pre-date a 2008 settlement and dismissal with prejudice of a previous shareholder derivative action in Alaska, *In re BP p.l.c. Deriv. Litig.*, No. 3AN-06-11929CI (Alaska Super. Ct. May 7, 2008) (the "Alaska Derivative Action"). (*See* Taylor Decl., Ex. 1 (Stipulation of

Settlement), 2 (Judgment).)[4]  Under the Stipulation of Settlement, which was approved by the

Alaska court on May 7, 2008, "all matters that were raised or could have been raised in that

lawsuit on behalf of [BP]" were fully "settled, compromised and dismissed on the merits and

with prejudice."  (*Id.*, Ex. 1 at 1-2.)

Plaintiffs concede that they "did not issue a demand upon the Board prior to

initiating this action."  (Compl. ¶ 226.)  Acknowledging that standing to sue derivatively on

behalf of BP is governed by English law, they assert that "U.K. law . . . does not require that

shareholder plaintiffs first demonstrate that making such a demand would have been futile."

(*Id.*)  If, however, demand is required, plaintiffs argue in highly conclusory terms that "demand

was excused because a majority of the Director Defendants . . . would have been 'interested' in,

and therefore unable to fairly consider, a demand."  (*Id.* ¶ 227.)

## ARGUMENT

## I.    PLAINTIFFS LACK STANDING TO PURSUE THESE DERIVATIVE CLAIMS UNDER GOVERNING U.K. LAW.

As a threshold matter, this Court must determine whether plaintiffs have standing

to pursue these derivative claims.  *Warth* v. *Seldin*, 422 U.S. 490, 498 (1975) (standing is a

"threshold question in every federal case, determining the power of the court to entertain the

suit").  Plaintiffs' lack of standing to assert claims on behalf of BP requires dismissal under both

Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction and Rule 12(b)(6)

for failure to state a claim.  *See Winn* v. *Schafer*, 499 F. Supp. 2d 390, 395 (S.D.N.Y. 2007)

---

[4]     This Court may take judicial notice of the Stipulation of Settlement in the Alaska Derivative Action.  *See Pan Pac. Retail Props., Inc.* v. *Gulf Ins. Co.*, Civil No. 03-CV-679-WQH, 2004 U.S. Dist. LEXIS 28534, at *47-48 (S.D. Cal. July 14, 2004) (taking judicial notice of stipulation of settlement and orders issued in different forum), *rev'd in part on other grounds*, 466 F.3d 867 (9th Cir. 2006); *Colina* v. *One E. River Place Realty Co.*, No. 99-civ-5173, 2000 U.S. Dist. LEXIS 11728, at *7 (S.D.N.Y. Aug. 17, 2000) (court may take judicial notice of stipulation of settlement and related proceedings in different forum).

(dismissing shareholder derivative claims "[u]nder either Rule").[5]

### A.    The Law of England and Wales Applies to This Action.

Because plaintiffs invoke this Court's jurisdiction based on diversity of citizenship under 28 U.S.C. § 1332 (Compl. ¶ 23), and this case was transferred from the U.S. District Court for the Eastern District of Louisiana (*id.* ¶ 25), Louisiana choice-of-law rules apply here.  *See McGuffie* v. *Mead Corp.*, 733 F. Supp. 2d 592, 594 (E.D. Pa. 2010) ("Where the [MDL transferee] Court has jurisdiction based upon diversity of citizenship under 28 U.S.C. § 1332, the Court will apply state substantive law as determined by the choice of law analysis required by the state in which the action was filed . . . ."); *In re Parmalat Sec. Litig.*, 659 F. Supp. 2d 504, 517 (S.D.N.Y. 2009) ("[T]he [MDL] transferee court applies the state substantive law that would have been applied in the transferor court pursuant to the state choice of law rules that would have governed in that forum."); *see also Torch Liquidating Trust ex rel. Bridge Assocs. LLC* v. *Stockstill*, 561 F.3d 377, 386 n.7 (5th Cir. 2009) ("This case was filed in the Eastern District of Louisiana, so Louisiana choice of law rules apply.").

"Under Louisiana law, the law of the place where [a] corporation was incorporated governs disputes regarding the relationship between the officers, directors, and shareholders and the officers' and directors' fiduciary duties." *Torch Liquidating Trust*, 561

---

[5]    In considering a motion to dismiss under Rule 12(b)(1), the Court must "consider plaintiff's complaint, including attachments, as supplemented by undisputed facts adduced by the defendant's motion and plaintiff's response" in order to determine "whether it has the statutory or constitutional power to adjudicate this case." *Am. S. Ins. Co.* v. *Buckley*, No. 1:09-CV-723, 2010 U.S. Dist. LEXIS 102668, at *16  (E.D. Tex. Sept. 1, 2010) (citing *Neinast* v. *Texas*, 217 F.3d 275, 278 n.6 (5th Cir. 2000)). As the party invoking federal jurisdiction, plaintiffs bear the burden of proof on a Rule 12(b)(1) motion to dismiss. *Ramming* v. *United States*, 281 F.3d 158, 161 (5th Cir. 2001).  In reviewing a motion to dismiss under Rule 12(b)(6), the Court must construe the complaint in favor of plaintiffs and take all well-pleaded facts as true. *Kane Enterprises* v. *MacGregor (US), Inc.*, 322 F.3d 371, 374 (5th Cir. 2003).  "Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief," *Rios* v. *City of Del Rio, Texas*, 444 F.3d 417, 421 (5th Cir. 2006), and "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent" dismissal, *Taylor* v. *Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) (internal quotation marks omitted).

F.3d at 386 n.7; *accord State ex rel. Watkins* v. *N. Am. Land & Timber Co.*, 31 So. 172, 177 (La. 1902) ("[T]he legal relations between a corporation and its shareholders are to be determined by the law of the home state . . . .") (internal quotation marks omitted).  This choice-of-law rule, known as the internal affairs doctrine, promotes consistency and uniformity in the treatment of a company's officers, directors and shareholders.  *Edgar* v. *MITE Corp.*, 457 U.S. 624, 645 (1982) ("The internal affairs doctrine is a conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs—matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders—because otherwise a corporation could be faced with conflicting demands.").  The internal affairs doctrine is not unique to Louisiana, but rather is followed generally throughout the United States, including in Texas.  *See* Tex. Bus. Orgs. Code § 1.102 (codifying internal affairs doctrine); *Hollis* v. *Hill*, 232 F.3d 460, 464-65 (5th Cir. 2000) ("Texas, like most other states, follows the 'internal affairs doctrine.'").[6]

It is well settled that whether a shareholder has standing to sue derivatively on behalf of a corporation is a substantive question pertaining to the internal affairs of the corporation and thus is governed by the law of the place of incorporation of the company in which the shareholder owns an interest.  *See*, *e.g.*, *Batchelder* v. *Kawamoto*, 147 F.3d 915, 920 (9th Cir. 1998) (holding that Japanese law applies to standing to sue derivatively on behalf of Japanese corporation because plaintiff's "prerogative to step into the shoes of the parent

---

[6]     *See*, *e.g.*, *Shaffer* v. *Heitner*, 433 U.S. 186, 215 n.44 (1977) ("In general, the law of the State of incorporation is held to govern the liabilities of officers or directors to the corporation and its stockholders."); *Hausman* v. *Buckley*, 299 F.2d 696, 702 (2d Cir. 1962) ("The 'internal affairs' choice-of-law rule, as applied to issues peculiar to disputes involving corporations, is well established and generally followed throughout this country."); *VantagePoint Venture Partners 1996* v. *Examen, Inc.*, 871 A.2d 1108, 1112 (Del. 2005) ("The internal affairs doctrine is a long-standing choice of law principle which recognizes that only one state should have the authority to regulate a corporation's internal affairs—the state of incorporation.").

corporation as derivative plaintiff, or of the subsidiary as double derivative plaintiff, must be determined by the law of the place of incorporation of the company in which he holds an interest"); *Hausman* v. *Buckley*, 299 F.2d 696, 701 (2d Cir. 1962) (holding that Venezuelan law applies to standing to sue derivatively on behalf of Venezuelan corporation because "condition imposed by Venezu[e]lan law on the right to enforce corporate claims goes to the substance of that right, and cannot be treated as dealing with the mere procedure by which the claims are enforced"); *Vaughn* v. *LJ Int'l, Inc.*, 94 Cal. Rptr. 3d 166, 171 (Cal. Ct. App. 2009) (holding that British Virgin Islands law applies to standing to sue derivatively on behalf of British Virgin Islands corporation because "presence or absence of standing to bring an action is most appropriately characterized as resolving a substantive right" and is not "a matter of mere court administration or 'mode of proceeding'"); *Levine* v. *Milton*, 219 A.2d 145, 147 (Del. Ch. 1966) (holding that Panamanian law applies to standing to sue derivatively on behalf of Panamanian corporation because "right of a stockholder to bring a derivative action is a question of substantive law to be determined by the law of the state or country of incorporation").

Under the internal affairs doctrine, the laws of England and Wales—the place of BP's incorporation—govern whether plaintiffs have standing to sue derivatively on behalf of BP. Indeed, there appears to be no dispute regarding which jurisdiction's laws apply to plaintiffs' claims.  In their Complaint, plaintiffs readily acknowledge that the U.K. Companies Act governs their derivative claims brought on behalf of BP.  (*See* Compl. ¶ 174 ("Section 174 of the Companies Act requires that a director 'exercise reasonable care, skill and diligence' . . . ."); *see also id.* ¶¶ 173, 226, 249, 255.)  Notwithstanding this recognition that the Companies Act applies to their derivative claims, plaintiffs have failed to comply with that statute's requirements for asserting such claims and therefore lack standing to sue derivatively.  Plaintiffs cannot invoke

-9-

the Companies Act as the basis for their claims while ignoring one of its most fundamental

requirements.

**B.      Plaintiffs Did Not Obtain Pre-Suit Authorization from the English
         High Court as Required by the Companies Act.**

Plaintiffs have not complied with a fundamental statutory prerequisite imposed by

English law for bringing derivative claims on behalf of an English company.  Prior to the

enactment of the Companies Act, standing to assert derivative claims on behalf of an English

corporation was governed by the English common-law rule of *Foss* v. *Harbottle*, (1843) 2 Hare

461 (Eng.), and its exceptions.  (*See* Moore Decl. ¶ 8.)  Applying this rule, United States courts

routinely dismissed derivative actions brought on behalf of English companies for lack of

standing.[7]  In 2006, the United Kingdom enacted the Companies Act, a comprehensive statutory

scheme that became effective on October 1, 2007, and now governs all shareholder derivative

actions brought on behalf of English corporations.[8]  (*See id*. ¶ 13 (citing Companies Act §§ 260-

69) & Ex. 2 (attaching text of Companies Act §§ 260-64).)  Section 260(2) of the Companies Act

expressly provides that "[a] derivative claim may only be brought under this Chapter, or in

pursuance of an order of the court in proceedings under Section 994 (proceedings for protection

of members against unfair prejudice)."

---

[7]      *See*, *e.g.*, *City of Harper Woods Employees' Ret. Sys*. v. *Olver*, 589 F.3d 1292, 1299-1304 (D.C.
Cir. 2009); *In re BP p.l.c. Deriv. Litig*., 507 F. Supp. 2d 302, 311 (S.D.N.Y. 2007); *Seghers* v. *Thompson*,
No. 06-CIV-308-RMB-KNF, 2006 WL 2807203, at *4 (S.D.N.Y. Sept. 27, 2006); *In re Tyco Int'l Ltd*.,
340 F. Supp. 2d 94, 103 (D.N.H. 2004).

[8]      To the extent plaintiffs seek to bring claims arising from events occurring prior to the effective
date of the Companies Act, such claims were the subject of the Alaska Derivative Action that was settled
and dismissed with prejudice in 2008.  (*See* Taylor Decl., Exs. 1 & 2.)  Consequently, those claims have
been released and are barred from relitigation here under principles of *res judicata*.  *See*, *e.g.*, *Goldman* v.
*Northrop Corp.*, 603 F.2d 106, 109 (9th Cir. 1979) (settlement of previous shareholder derivative action
barred as *res judicata* subsequent derivative action).

Under the Companies Act, a shareholder seeking to sue derivatively on behalf of a corporation organized under the laws of England and Wales first must obtain permission to sue from the English High Court.  As Martin Moore explains, "the application for permission to continue a derivative claim is the centrepiece of the English regime for dealing with derivative claims" under the Companies Act.  (*Id.* ¶ 25.)  Section 261(1) of the Companies Act states that "[a] member of a company who brings a derivative action under this Chapter *must* apply to the court for permission (in Northern Ireland, leave) to continue it" (emphasis added).  The "court" referred to in the Companies Act is the English High Court:  Section 1156(1)(a) of the Companies Act expressly states that "[e]xcept as otherwise provided, in the Companies Act 'the court' means . . . in England and Wales, the High Court or (subject to subsection (3)) a county court."  (*See id.* ¶¶ 30-31.)

Rather than require a demand on the company's board of directors and litigation over whether such demand is excused, the Companies Act mandates a two-stage process that a shareholder of an English corporation must follow to pursue a derivative claim on behalf of the company.  (*See id.* ¶¶ 22-29 (citing Companies Act § 261).)  This two-stage process serves the same "gatekeeper" function as the demand requirement under the laws of Texas, Louisiana and most U.S. states.  *See infra* p. 24.  Under the Companies Act, the shareholder first must apply to the High Court for permission to pursue a derivative claim.  Section 261(2) gives the High Court "power to dismiss the claim without any further steps if the evidence filed on that application does not disclose a prima facie case for giving permission."  (*Id.* ¶¶ 22(a), 26.)  If the shareholder clears this initial hurdle, the High Court then will give directions for the filing of evidence by the company and the hearing of the shareholder's application.  (*See id.* ¶¶ 22(b), 27.)  In determining whether ultimately to grant permission to continue the derivative action, the High Court applies

the factors set out in Section 263 of the Companies Act (quoted in its entirety in Mr. Moore's

declaration).  (*See id.* ¶ 27.)  According to Mr. Moore, "[t]he effect of this regime is that no

substantive steps may be taken in the action until the Court has evaluated all the relevant

factors," including "factors relating to the merits of the claim, questions of authorisation and

ratification, the bona fides of the plaintiff, and the wider commercial interests of 'promoting the

success of the company' and the views of independent shareholders."  (*Id.* ¶ 29.)

There are no statutory exceptions to the Companies Act's requirement that a

shareholder obtain authorization from the English High Court to pursue derivative claims on

behalf of an English company.  And the Companies Act does not permit a foreign court to

substitute itself for the English High Court in determining whether permission to sue on behalf of

an English corporation should be granted.  To the contrary, the Companies Act expressly states

that "the court" referred to in Section 261(1) is the High Court or a county court in England and

Wales.  (*See id.* ¶ 30 (quoting Companies Act § 1156(1)(a)).)  Martin Moore explains:

> It is not surprising that "the Court" is specified to mean the English Court.  The
> exercise set out in ss.261 and s.263 are inherently English matters.  They involve
> an evaluation not only of the merits of any substantive claim, but also of the wider
> internal affairs and interests of an English company.  The substantive claim for
> breach of fiduciary duty is governed by English law, and under s.263(3)(b) the
> Court is required to have regard to the English law duty under s.172.
>
> The latter test involves, unusually, the Court putting itself in the shoes of a
> director of the company, and in essence exercising a business judgment.  It would
> be surprising if the legislature had intended that such a judgment should be made
> on behalf of an English company by a foreign court.

(*Id.* ¶¶ 32-33.)[9]

---

[9]     Although plaintiffs concede that the Companies Act governs their derivative claims, they also
allege that because BP is a global company with extensive U.S. operations and jurisdictional ties to the
U.S., "[t]his Court is the most appropriate forum to hear these claims."  (Compl. ¶ 211.)  The fact that BP
may be "present" in the U.S. for jurisdictional purposes—an issue BP is not contesting in this litigation—
in no way relieves a shareholder seeking to bring a derivative action on behalf of an English company
from complying with the requirements imposed by governing English law for bringing such an action.

A California appellate court recently considered a nearly identical pre-suit authorization requirement of the British Virgin Islands ("BVI") Business Companies Act of 2004 and affirmed the dismissal of a derivative action for lack of standing because the shareholder had not obtained permission to sue from the High Court of the BVI.  *See Vaughn*, 94 Cal. Rptr. 3d at 168.  The shareholder in that case had filed a derivative action in California state court alleging breaches of fiduciary duty by the officers and directors of a corporation incorporated in the BVI. *Id*.  In affirming the dismissal of the action without leave to amend, the court held that the BVI Business Companies Act requires permission from the High Court of the BVI before a shareholder may sue derivatively:

> A British Virgin Islands statute requires approval from the high court of that jurisdiction before a shareholder may sue derivatively.  Here we hold that such approval was required before the instant California lawsuit could proceed.  Because the plaintiff had no such approval, the trial court properly sustained defendant/respondents' demurrer without leave to amend.

*Id*.

In so ruling, the *Vaughn* court concluded that Section 184C of the BVI Business Companies Act—which contains the relevant requirement—"by its own terms limits entitlement to sue to those shareholders who have complied with its provisions."  *Id*. at 171.  Although it acknowledged that "those provisions do establish what may be called a procedure for compliance," the court held that "the resulting decision as to the presence or absence of standing to bring an action is most appropriately characterized as resolving a substantive right."  *Id*. (citing *Hausman*, 299 F.2d at 701).  The court stated it was "not persuaded that standing to sue is a matter of mere court administration or 'mode of proceeding' as argued by appellant."  *Id*.  The court also determined that these provisions of BVI law applied to the California derivative action under the internal affairs doctrine.  As the court explained, "Section 184C, in establishing a

-13-

condition precedent to the right of a shareholder to derivatively sue corporate directors on behalf of the company, most definitely regulates the internal affairs of the corporation." *Id*. at 175.

Because plaintiffs in this action, like the plaintiff in *Vaughn*, have not obtained the necessary permission from the English High Court to proceed with their derivative claims on behalf of BP, they likewise lack standing to sue derivatively, and the entire action should be dismissed without leave to amend.[10]

## II.    THE COURTS OF ENGLAND ARE A MORE SUITABLE FORUM FOR THIS DERIVATIVE LITIGATION.

### A.    The Complaint Should Be Dismissed on *Forum Non Conveniens* Grounds.

Even if the Court were to find that plaintiffs have standing to bring their derivative claims under English law, the Complaint still should be dismissed under the doctrine of *forum non conveniens*.  That doctrine recognizes a court's discretion to decline to exercise jurisdiction over a suit if the convenience of the parties and the court and the interests of justice point towards adjudication of the case in another forum.  *See Koster* v. *(American) Lumbermens Mut'l Casualty Co.*, 330 U.S. 518, 527 (1947); *Karim* v. *Finch Shipping Co.*, 265 F.3d 258, 268 (5th Cir. 2001).  In deciding whether to dismiss a case on grounds of *forum non conveniens*, a court first must consider whether an alternative forum exists and then must weigh the relevant public and private interest factors, giving whatever deference to the plaintiff's choice of forum is warranted by the circumstances.  *See Karim*, 265 F.3d at 268; *Syndicate 420 at Lloyd's London*

---

[10]    Defendant H. Lamar McKay, the current Chairman and President of BP America, and his predecessor, Robert A. Malone, should be dismissed from the case under English law for an additional reason.  Plaintiffs do not allege that either Mr. McKay or Mr. Malone is a current or former director of BP.  (*See* Compl. ¶¶ 48-49.)  As Martin Moore explains, the circumstances in which a derivative claim may be brought against an individual who is not a current or former director of the relevant company are extremely limited under the Companies Act.  (*See* Moore Decl. ¶ 44.)  "[T]he cause of action against the non-director must arise from an act or omission by a director of the Plaintiff company in his capacity as such."  (*Id.* ¶ 46.)  Such circumstances have not been alleged here.  (*See* Compl. ¶¶ 261-72.)  As Mr. Moore notes, "[i]t is not suggested that any breach by Mr. McKay or Mr. Malone was consequent on a breach by a BP Plc director."  (Moore Decl. ¶ 51.)

v. *Early Am. Ins. Co.*, 796 F.2d 821, 828 (5th Cir. 1986).  Here, the English courts offer an

alternative—and more appropriate—forum for this suit, and the private and public interest

factors weigh overwhelmingly in favor of litigating in England where BP is incorporated and

headquartered.  Moreover, plaintiffs' choice of a forum is entitled to little or no deference

because plaintiffs are suing in a representative capacity on behalf of BP.[11]

### 1. The English High Court Provides an Alternative Forum for These Claims.

There can be no doubt that English courts present an alternative forum—if not the

exclusive forum—for this litigation involving derivative claims brought on behalf of an English

company.  Indeed, U.S. courts have routinely found that English courts are a suitable alternative

forum in ruling on motions to dismiss on *forum non conveniens* grounds.  *See, e.g.*, *Robinson* v.

*TCI/US West Commc'ns Inc.*, 117 F.3d 900, 908 (5th Cir. 1997); *Syndicate 420*, 796 F.2d at 828-

30; *see also Wiwa* v. *Royal Dutch Petroleum Co.*, 226 F.3d 88, 101 (2d Cir. 2000) ("We regard

the British courts as exemplary in their fairness and commitment to the rule of law.").

To demonstrate that an alternative forum exists for purposes of *forum non*

*conveniens*, a defendant must show that the proposed alternative is both available and adequate.

*Syndicate 420*, 796 F.2d at 828.  English courts are an available forum for the present case

because the individual defendants are amenable to process there.  *See Piper Aircraft Co.* v.

*Reyno*, 454 U.S. 235, 255 n.22 (1981); *Karim*, 265 F.3d at 268.  A significant number of the

director defendants are English citizens who obviously are subject to jurisdiction in the courts of

---

[11]     Because this case was transferred to this Court for purposes of pretrial proceedings pursuant to 28
U.S.C. § 1407, the focus of the *forum non conveniens* analysis is properly the Eastern District of
Louisiana, where plaintiffs brought suit and where an eventual trial would take place, should the case
advance to that stage.  *See In re Factor VIII or IX Concentrate Blood Prods. Litig.*, 484 F.3d 951 (7th Cir.
2007) (affirming dismissal by MDL transferee court in the Northern District of Illinois of action
originally brought in the Northern District of California on grounds of *forum non conveniens* after
transferee court found that the United Kingdom was a more appropriate and convenient forum than the
Northern District of California).

England, and the remaining director defendants would be subject to the jurisdiction of the

English courts in connection with claims arising out of and directly related to their duties as

directors of an English corporation.

English courts also provide an adequate forum because the subject matter of this

case is cognizable there, and "the parties will not be deprived of all remedies or treated unfairly."

*Saqui* v. *Pride Cent. Am., LLC*, 595 F.3d 206, 211-12 (5th Cir. 2010) (internal quotation marks

omitted).  The Companies Act expressly permits litigation of derivative claims before the

English High Court.  (*See* Moore Decl. ¶ 8; *see also id.* ¶¶ 39, 41.)  Since the Companies Act

became effective in October 2007, the High Court has allowed a number of derivative actions to

proceed under the framework established by that statute.  (*See id.* ¶ 39.)  Once the High Court

authorizes a member of an English company to proceed with derivative claims, the member can

seek damages and injunctive relief on behalf of a corporation for any harm inflicted upon it.  (*See*

*id.* ¶ 42.)

## 2. The Public and Private Interest Factors Weigh Heavily in Favor of Litigating in the English High Court.

If an alternative forum exists, the next step "is to proceed to a balancing of the

public and private interest factors."  *Syndicate 420*, 796 F.2d at 828.  "[I]f the balance of

conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the

defendant or the court, dismissal is proper."  *Piper Aircraft*, 454 U.S. at 256 n.23.  In the present

case, plaintiffs' choice of a Louisiana forum for claims brought on behalf of an English company

for alleged violations of duties owed under English law by primarily non-U.S. defendants is

inconvenient for the parties and the court.  This action more appropriately belongs in the English

High Court.

As an initial matter, plaintiffs' choice of Louisiana as their preferred forum is entitled to minimal deference because plaintiffs are suing in a strictly representative capacity on behalf of BP, and not in their own right.  "[W]here there are hundreds of potential plaintiffs, all equally entitled voluntarily to invest themselves with the corporation's cause of action and all of whom could with equal show of right go into their many home courts, the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened."  *Koster*, 330 U.S. at 524; *see also Piper Aircraft*, 454 U.S. at 256 (holding that plaintiff's choice of forum is entitled to less weight when the real party in interest is foreign).[12] Additionally, with two exceptions, plaintiffs here are not Louisiana residents (Compl. ¶¶ 26-29), and thus their choice to bring suit in the Eastern District of Louisiana deserves even less deference.  *See Sinochem Int'l Co.* v. *Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007); *Piper Aircraft*, 454 U.S. at 255-56.

### a.   The Relevant Private Interest Factors Weigh Decisively in Favor of Dismissal.

Turning to the private interest factors, the Supreme Court has identified the following considerations as relevant to the private interests of the litigants:

(1)   the relative ease of access to sources of proof;

(2)   availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses;

(3)   possibility of view of premises, if view would be appropriate to the action; and

(4)   all other practical problems that make trial of a case easy, expeditious and inexpensive.

---

[12]   Plaintiffs do not allege that they "have a substantial interest of [their] own to protect" or that they have "any knowledge by which [their] presence would help to make whatever case can be made in behalf of the corporation."  *Koster*, 330 U.S. at 525.  Without a personal stake in this litigation, there is no good reason to defer to these plaintiffs' choice of a forum in the United States.  Instead, derivative litigation, brought in the name of BP to vindicate the rights of BP, properly belongs in the High Court in England as contemplated by the Companies Act.  *See supra* pp. 10-14.

*Gulf Oil Corp.* v. *Gilbert*, 330 U.S. 501, 508 (1947); *accord Saqui*, 595 F.3d at 213.  Not one of these factors supports Louisiana as the more convenient forum or weighs in favor of ultimately maintaining this action here.  To the extent relevant here, they counsel strongly in favor of the English High Court as the appropriate forum for this derivative litigation.

   The first factor—the relative ease of access to sources of proof—clearly favors England as the most convenient forum.  The discovery in this case likely will focus not on the facts and circumstances of the oil spill in the Gulf of Mexico, but rather on the BP directors' exercise of their oversight duties.  As the Supreme Court has explained, the relevant evidence in a derivative action most likely involves the information that was provided to and the actions that were undertaken by the company's board of directors.  *See Koster*, 330 U.S. at 526 ("[I]n the derivative action it is more likely that only the corporation's books, records and transactions will be important and only the defendant will be affected by the choice of the place of production of records.").  As explained in the accompanying declaration of BP's corporate secretary, David Jackson, BP's corporate records are maintained at the company's headquarters in London.  (*See* Declaration of David J. Jackson dated March 14, 2011 ¶ 5.)  As a result, the parties will have easy access to all of the relevant corporate documents if this case is litigated in England, a factor that strongly suggests that the English High Court is the most convenient forum.  *See*, *e.g.*, *Piper Aircraft*, 454 U.S. at 258 (affirming dismissal of action where "[a] large proportion of the relevant evidence is located in Great Britain"); *Scottish Air Int'l, Inc.* v. *British Caledonian Group, p.l.c.*, 81 F.3d 1224, 1233 (2d Cir. 1996) (affirming dismissal of action where "most—if not all—relevant documents are located in Great Britain"); *Syndicate 420*, 796 F.2d at 831 (affirming dismissal of action where "[m]ost, if not all, of the pertinent documentary and other evidence is in England").

-18-

The second factor—the availability of compulsory process for attendance of unwilling witnesses and the cost of attendance for willing witnesses—likewise demonstrates that Louisiana is a far more *inconvenient* forum than the English High Court.  In any derivative action, the most significant witnesses will be the directors themselves.  In the case at bar, not a single one of the individual defendants is alleged to reside in Louisiana.  (*See* Compl. ¶¶ 31-49.) Instead, a significant majority of the defendants are non-U.S. nationals, most of whom reside in the U.K. while a few others reside in other European countries.  Consequently, the vast majority of witnesses in this case are likely to be subject to the compulsory process of the English courts, whereas the District Court for the Eastern District of Louisiana may be without a mechanism to compel their attendance at trial.  *See infra* Part IV.  Additionally, non-party witnesses are also likely to be found in London, where BP is headquartered and its Board of Directors frequently meets, and thus would be beyond the subpoena power of courts sitting in Louisiana or Texas. Finally, the cost of obtaining the attendance at trial in Louisiana of even willing witnesses would be substantial.  *See*, *e.g.*, *Syndicate 420*, 796 F.2d at 831 ("Most of th[e] witnesses are British, many may prove unwilling to travel to Louisiana to testify, and an American federal court is without power to compel them to do so.  In any event, the cost of obtaining the attendance of even those witnesses who are willing to come to Louisiana to offer their evidence would certainly be considerable, and could prove to be prohibitive."); *Windt* v. *Qwest Commc'ns Int'l, Inc.*, 529 F.3d 183, 196 (3d Cir. 2008) ("flying witnesses . . . across the Atlantic both ways on a regular basis, thus incurring substantial travel and accommodation expenses," is a factor that supports dismissal).[13]

---

[13]     The third factor—the possibility of a view of the premises—has little relevance here because the claims at issue relate to the decision-making and oversight of BP's Board of Directors.  As a result, visiting a physical location will not be part of the proof.

"In a nutshell, the practical problems of trying this dispute in Louisiana are such that the proceeding is likely to prove difficult, lengthy, and expensive.  Such a result cannot satisfy *Piper*'s instruction that the trial of a case should proceed in the forum where it will prove 'easy, expeditious and inexpensive.'"  *Syndicate 420*, 796 F.2d at 831.

### b.    The Public Interest Factors Likewise Point Decisively Towards Dismissal.

The public interest factors also strongly support dismissal of this action in deference to the English courts.  The relevant public interest factors are:

(1)    the administrative difficulties flowing from court congestion;

(2)    the local interest in having localized controversies decided at home;

(3)    the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action;

(4)    the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and

(5)    the unfairness of burdening citizens in an unrelated forum with jury duty.

*Saqui*, 595 F.3d at 214; *see also Gulf Oil*, 330 U.S. at 508-09.

First, the "administrative difficulties" factor weighs in favor of dismissal.  As the Supreme Court has stated, derivative "litigation brings to the court more than an ordinary task of adjudication; it brings a task of administration; and what forum is appropriate for such a task may require consideration of its relation to the whole group of members and stockholders whom plaintiff volunteers to represent as well as to the nominal plaintiff himself."  *Koster*, 330 U.S. at 526; *see also Syndicate 420*, 796 F.2d at 831 (explaining, in context of complex action involving substantial number of foreign parties, that "[t]he administrative difficulties [the case] poses if it remains on the docket in the Eastern District [of Louisiana] are tremendous and do much to persuade us, from a public interest standpoint, that the British forum is more appropriate for the resolution of this dispute").

-20-

Second, the consideration of "having localized controversies decided at home" similarly militates towards dismissing this case.  Plaintiffs do not seek to recover damages on behalf of Louisiana citizens.  They instead seek to redress injury allegedly sustained by an English company as a result of alleged breaches of fiduciary duties under English law by the company's directors.  The resolution of that controversy is best left to the English High Court, which has the greatest interest in the governance of English corporations.  *See Koster*, 330 U.S. at 523-27 (upholding *forum non conveniens* dismissal of derivative action because, among other things, real party in interest was corporation organized under laws of alternative foreign forum); *Gilstrap* v. *Radianz Ltd.*, 443 F. Supp. 2d 474, 489 (S.D.N.Y. 2006) ("The matters at issue here are, in large part, those of 'internal corporate governance' of English companies, in which English courts would have a much greater local interest than the citizens of this District.") (quoting *Scottish Air*, 81 F.3d at 1234).

Third, this case involves the application of a recently enacted U.K. statute—the Companies Act.  As a result, the public interests in trying a case in "a forum that is at home with the law that must govern the action" and in avoiding "unnecessary problems . . . in the application of foreign law" counsel strongly in favor of proceeding in the English High Court.  Because the provisions of the Companies Act governing derivative actions became effective less than four years ago, the English High Court has had only limited opportunities to apply them.  Given that jurisprudence under the Companies Act is still evolving, an English court should be given the opportunity to resolve issues of first impression arising under its own statute as opposed to having an American court "'untangle problems in conflict of laws, and in law foreign to itself.'"  *Piper Aircraft*, 454 U.S. at 251 (quoting *Gulf Oil*, 330 U.S. at 509); *see also id.* ("The doctrine of *forum non conveniens* . . . is designed in part to help courts avoid conducting

-21-

complex exercises in comparative law . . . ."); *Denmark* v. *Tzimas*, 871 F. Supp. 261, 271 (E.D. La. 1994) ("Although this Court is capable of applying English law, the courts of England are certainly better suited for such a task.").

Fourth, the "unfairness of burdening citizens in an unrelated forum with jury duty" also counsels in favor of dismissing this case.  Louisiana citizens should not be put to the burden of serving as jurors in a case that will decide whether an English company can recover damages and other relief from the company's directors for alleged breaches of fiduciary duties under English law.  The only party that stands to gain from the successful litigation of this derivative action is BP itself, not the local citizens of Louisiana.  *See Kamen* v. *Kemper Fin. Servs., Inc.*, 500 U.S. 90, 95 (1991) (derivative litigation acts as "a means to protect the interests of the corporation").

*        *        *

In sum, the private and public interest factors in this case weigh overwhelmingly in favor of dismissal.  Accordingly, the Court should dismiss this action on grounds of *forum non conveniens*.

**B.      Adjudicating Issues of Unsettled English Law Would
         Violate Principles of International Comity.**

Alternatively, the Court should refrain from exercising jurisdiction over this case in deference to the English legal system as a matter of international comity.  "Comity refers to the spirit of cooperation in which a domestic tribunal approaches the resolution of cases touching the laws and interests of other sovereign states."  *Societe Nationale Industrielle Aerospatiale* v. *United States Dist. Ct. for the S. Dist. of Iowa*, 482 U.S. 522, 543 n.27 (1987).  The Supreme Court has explained:

> "Comity," in the legal sense, is neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other.  But it is the recognition

-22-

> which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or of other persons who are under the protection of its laws.

*Hilton* v. *Guyot*, 159 U.S. 113, 143 (1895); *see also Boudreaux* v. *Ford Motor Co.*, 533 So. 2d 1213, 1219 (La. 1988) (following *Hilton*).  Courts often have found it appropriate to decline jurisdiction on grounds of international comity when the claims at issue involve "the application of novel, complex and developing foreign law."  *Empagran, S.A.* v. *F. Hoffman-La Roche Ltd.*, 453 F. Supp. 2d 1, 12 (D.D.C. 2006); *accord Info. Res., Inc.* v. *The Dun & Bradstreet Corp.*, 127 F. Supp. 2d 411, 417-18 (S.D.N.Y. 2000) (even though foreign law was "roughly analogous" to U.S. law, claims involved "sufficiently novel and complex issues" and would require the court to "decide what European Community law would be, *de novo*").

   As noted above, the provisions of the Companies Act governing derivative litigation are still relatively new, and English courts thus far have provided very little guidance with respect to the application and effect of those provisions.[14]  In deference to the English legal system, this Court should decline jurisdiction over this action and thus give the English High Court the opportunity to oversee the development of English corporate law by interpreting and applying the Companies Act in this important, high-profile case.  *Empagran*, 453 F. Supp. 2d at 12; *Info. Res.*, 127 F. Supp. 2d at 417-18.

---

[14] There exist numerous unresolved questions under the Companies Act.  *See* Joseph Lee, *Shareholders' Derivative Claims Under the Companies Act 2006: Market Mechanism or Asymmetric Paternalism?*, I.C.C.L.R. 2007, 18(11), 391 ("The courts retain the power to refuse permission to continue a derivative claim.  This involves taking into account a number of substantive issues that have not yet been resolved.  These include the scope of directors' duties, the effect of ratification, and the impact of the conflict of interest rule.  On the procedural side, the courts have the power to rule on evidential requirements and on a number of cost issues which are highly relevant to providing the right incentives and a level playing field in the litigation."); Andrew Keay & Joan Loughrey, *Something Old, Something New, Something Borrowed: An Analysis of the New Derivative Action Under the Companies Act 2006*, L.Q.R. 2008, 124 (Jul), 470 (observing that the Companies Act "replaces the common law, and there is a lack of judicial precedent on how the criteria should be applied" in derivative litigation).

-23-

III.    **TO THE EXTENT REQUIRED, PLAINTIFFS FAIL ADEQUATELY TO PLEAD DEMAND FUTILITY.**

      In determining whether demand should be excused as futile, a federal court must look to the law of the state of incorporation of the entity on whose behalf a derivative plaintiff purports to sue.  *Midwestern Teamsters Pension Trust Fund* v. *Deaton*, Civil Action No. H-08-1809, 2009 U.S. Dist. LEXIS 50521, at *16-17 (S.D. Tex. May 7, 2009).  As explained above, in enacting the Companies Act, the U.K. Parliament codified an alternative to the demand requirement by assigning to the English High Court, rather than the board of directors of the nominal defendant, the gatekeeper role in deciding whether a derivative claim can proceed.  As one recent article observed, "under the Companies Act, the court makes the initial determination of whether shareholder derivative litigation is in the interest of the corporation, rather than the board of directors."  Kurt A. Goehre, *Is the Demand Requirement Obsolete?  How the United Kingdom Modernized Its Shareholder Derivative Procedure and What the United States Can Learn From It*, 28 Wisc. Int'l Law J. 140, 164-65 (2010) ("[T]he fundamental difference is that the court, rather than the board of directors, oversees the initial determination as to whether the claim can proceed.").[15]

      If the Court, notwithstanding the well-settled internal affairs doctrine, were to apply Louisiana law rather than U.K. law in this case, plaintiffs' derivative claims still should be dismissed for failure to plead adequately demand futility.

---

[15]    Plaintiffs concede this point by alleging that "[t]o the extent U.K. law is applicable to this derivative complaint, such law does not require that shareholder plaintiffs first demonstrate that making a demand would have been futile."  (Compl. ¶ 226.)  Plaintiffs cannot have it both ways:  They cannot escape the demand requirement of Louisiana law by invoking English law and then ignore the alternative requirement under English law of obtaining permission to sue from the English High Court.

-24-

### A.    Demand Futility Must Be Pled With Particularity.

Federal Rule of Civil Procedure 23.1 requires a plaintiff in a shareholder derivative action to "state with particularity[] any effort by the plaintiff to obtain the desired action from the directors or comparable authority . . . and the reasons for not obtaining the action or not making the effort." Fed. R. Civ. P. 23.1(b)(3). "Recognizing that Rule 23.1 gives little dimension to the demand requirement, the [Supreme] Court directed lower federal courts to look to state law to determine the scope of the demand requirement." *Guitierrez* v. *Logan*, No. H-02-Civ-1812, 2005 WL 2121554, at *3 (S.D. Tex. Aug. 31, 2005) (citing *Kamen* v. *Kemper Fin. Servs., Inc.*, 500 U.S. 90, 96-97 (1991)).  Under Louisiana law, derivative plaintiffs must "[a]llege with particularity the efforts of the plaintiff to secure from the managing directors . . . the enforcement of the right and the reasons for his failure to secure such enforcement, or the reason for not making such an effort to secure enforcement of the right." La. Code Civ. Proc. art. 615(2).[16]  The requirement that shareholders make a pre-suit demand on a company's board of directors—or explain with particularity why such a demand would be futile—derives from the "cardinal precept" that "directors, rather than shareholders, manage the business and affairs of

---

[16]    Under Texas law, plaintiffs' failure to make a demand on BP's Board of Directors would be fatal to their derivative claims because Texas has statutorily eliminated the excuse of demand futility.  *See* Tex. Bus. Orgs. Code § 21.553(a) (Vernon 2006) ("A shareholder may not institute a derivative proceeding until the 91st day after the date a written demand is filed with the corporation stating with particularity the act, omission or other matter that is the subject of the claim or challenge and requesting that the corporation take suitable action"); *see also In re Schmitz*, 285 S.W.3d 451, 455 (Tex. 2009) ("In 1997, the [Texas] Legislature extensively revised the Texas Business Corporation Act" to eliminate the possibility of pleading demand futility.); *Moonlight Invs., Ltd.* v. *John*, 192 S.W.3d 890, 893-94 (Tex. App. 2006) ("[D]ismissal of a derivative proceeding is the appropriate remedy when the shareholder fails to file a written demand.").

the corporation." *Aronson* v. *Lewis*, 473 A.2d 805, 811 (Del. 1984), *overruled on other grounds by Brehm* v. *Eisner*, 746 A.2d 244 (Del. 2000).[17]

Where, as here, allegations of demand futility are based on the director defendants' supposed liability for *failure* to take action, plaintiffs must plead particularized facts that "'create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand.'" *Guitierrez*, 2005 WL 2121554, at *6 (quoting *Rales* v. *Blasband*, 634 A.2d 927, 933-34 (Del. 1993)).  To do so, plaintiffs must allege specific facts demonstrating that "the potential for [director] liability is not a mere threat but instead may rise to a *substantial likelihood.*" *Id.* at *8 (quoting *In re Baxter Int'l, Inc. S'holders Litig.*, 654 A.2d 1268, 1269 (Del. Ch. 1995) (emphasis added) (internal quotation marks omitted); *see also Wood* v. *Baum*, 953 A.2d 136, 141 n.11 (Del. 2008).  Plaintiffs do not come close to satisfying these exacting standards.

### B.     Plaintiffs Have Not Alleged Specific Facts Demonstrating a Substantial Likelihood of Director Liability for Supposed Oversight Failures.

Plaintiffs contend that they were not required to make a demand of BP's Board of Directors because the director defendants allegedly "face a substantial likelihood of massive liability for their role in the BP Board's improper and unlawful conduct."  (Compl. ¶ 227.)  The gravamen of plaintiffs' allegations is that the director defendants breached their fiduciary duties

---

[17]      Although Louisiana courts have not ruled on the contours of the demand requirement in the context of a large, publicly traded corporation, the Fifth Circuit has "predicted that Louisiana law would follow the views of the leading national authorities in the case of a derivative action against the directors of a publicly traded corporation."  8 Glenn G. Morris & Wendell H. Holmes, La. Civ. L. Treatise, Business Organizations 34.13 n.19 (2009) (citing *Atkins* v. *Hibernia Corp.*, 182 F.3d 320 (5th Cir. 1999)). Delaware is "the Mother Court of corporate law."  *Kamen* v. *Kemper Fin. Servs., Inc.*, 908 F.2d 1338, 1343 (7th Cir. 1990), *rev'd on other grounds*, 500 U.S. 90 (1991).  Delaware's demand requirement closely resembles that of both Louisiana and the Federal Rules.  *Compare* Del. Ch. Ct. R. 23.1(b), *with* La. Code Civ. Proc. art 615 (same), *and* Fed. R. Civ. P. 23.1(b)(3) (same).

to BP by failing to "provide effective oversight of the company's safety culture and major accident prevention programs." (*Id.* ¶ 134.) In support of that claim, the Complaint alleges a series of oversight failures relating to BP's safety processes. (*See*, *e.g.*, *id.* ¶ 134 ("the first and foremost cause for the Texas City disaster was the Board's failure to provide oversight over BP's process safety"); *id.* ¶ 235 (director defendants "were under a duty to act upon [safety-related] information to protect the Company . . . [and] chose not to do so."); *id.* ¶ 244 ("the Board's lack of oversight had created a systemic process safety problem").) Such a theory of oversight liability "'is possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment.'" *In re Citigroup Inc. S'holder Deriv. Litig.*, 964 A.2d 106, 125 (Del. Ch. 2009) (quoting *In re Caremark Int'l Inc. Deriv. Litig.*, 698 A.2d 959, 967 (Del. Ch. 1996)).

Because "a showing of bad faith is a *necessary condition* to director oversight liability," *In re Citigroup*, 964 A.2d at 123 (emphasis in original), plaintiffs must allege "conduct that is qualitatively different from, and more culpable than . . . gross negligence," namely, that a director "intentionally act[ed] with a purpose other than that of advancing the best interests of the corporation, . . . act[ed] with the intent to violate applicable positive law, or . . . intentionally fail[ed] to act in the face of a known duty to act, demonstrating a conscious disregard for his duties." *Stone ex rel. AmSouth Bancorporation* v. *Ritter*, 911 A.2d 362, 369 (Del. 2006); *see also Desimone* v. *Barrows*, 924 A.2d 908, 935 (Del. Ch. 2007) (*Stone* imposes a "scienter-based standard"). Under this standard, "only a sustained or systematic failure of the board to exercise oversight—such as an utter failure to attempt to assure a reasonable information and reporting system exists—will establish the lack of good faith that is a necessary condition to liability." *In re Caremark*, 698 A.2d at 971.

-27-

Plaintiffs' conclusory allegations "do not even specify how the board's oversight mechanisms were inadequate or how the director defendants knew of these inadequacies and consciously ignored them." *In re Citigroup*, 964 A.2d at 128. To the contrary, plaintiffs concede that BP's Board of Directors affirmatively established various safety-related oversight and reporting mechanisms in direct response to the accidents and near-misses highlighted in the Complaint. (*See*, *e.g.*, Compl. ¶ 176 (BP Board adopted "'Board Governance Principles' which require and establish mechanisms for the Board to be informed about 'material risks to BP,' ensure[d] that 'systems of risk management, compliance and control are in place to mitigate such risks,' and address 'any material developments or issues concerning the skills and capability of the BP business.'"); *id.* ¶¶ 177-78 (BP Board created Safety, Ethics and Environment Assurance Committee ("SEEAC") to "ensur[e] that significant non-financial risks were adequately addressed by BP"); *id.* ¶ 180 ("Following the Texas City disaster, the SEEAC undertook to monitor the interaction of corporate culture and safety."); *id.* ¶ 185 (Group Operations Risk Committee, which was created in 2007 and "expressly charged with analyzing safety incidents in BP's operations," "regularly provides" its "analyses and data" to SEEAC).)

In asking that demand be excused in this case, plaintiffs apparently hope that "the Court will accept the conclusion that since the Company suffered large losses, and since a properly functioning risk management system would have avoided such losses, the directors must have breached their fiduciary duties in allowing such losses." *In re Citigroup*, 964 A.2d at 128. "With the benefit of hindsight, the plaintiffs' complaint seeks to equate a bad outcome with bad faith." *Stone*, 911 A.2d at 373. Such allegations do not establish a substantial likelihood of director liability and thus fail to excuse demand as a matter of law. *In re Citigroup*, 964 A.2d at 128-30.

-28-

**C.**    **Plaintiffs Fail to Allege Particularized Facts Specific to Each Director Defendant Demonstrating That a Majority of the Board Is Not Independent and Disinterested.**

Even assuming, *arguendo*, that plaintiffs' allegations are sufficient to establish a substantial likelihood of director liability for supposed oversight failures as a general matter, plaintiffs have not pled particularized facts "*specific to each director*" that demonstrate "that at least half of them could not have exercised disinterested business judgment in responding to a demand." *Desimone*, 924 A.2d at 943 (emphasis in original).

Allegations of demand futility may not "treat[] all defendants collectively and contend[] that, as a group, the directors caused" the alleged harm to the company. *Livermore* v. *Engles*, No. 3-10-CV-0882-BD, 2010 WL 3583999, at *3 (N.D. Tex. Sept. 13, 2010).  Yet that is precisely what plaintiffs attempt to do here.  Throughout the Complaint, plaintiffs allege that "BP," "the BP Board" or "Defendants" failed to take certain actions.  In so doing, plaintiffs "treat[] all defendants collectively and contend[] that, as a group, the directors caused [BP] to engage in illegal conduct, which excuses demand."  *See id.*  "Such 'group accusations' are insufficient to satisfy the pleading requirements of Rule 23.1."  *Id.* (citing *In re Citigroup*, 964 A.2d at 121 n.36); *see also Pedroli ex rel. Microtune, Inc.* v. *Bartek*, 564 F. Supp. 2d 683, 695 (E.D. Tex. 2008) ("conclusory allegations regarding the directors as a group are insufficient to demonstrate demand futility"); *In re ITT Corp. Deriv. Litig.*, 653 F. Supp. 2d 453, 459-60 (S.D.N.Y. 2009) (demand futility requires "specific allegations regarding each individual director" and "conflation of all the directors into a single entity is insufficient under Rule 23.1").

To the extent that plaintiffs attempt to make more specific allegations, those efforts fall well short of the particularized showing required by Rule 23.1.  Plaintiffs contend that BP's Executive Director Defendants are not disinterested or independent because they "derived substantial financial benefits from the implementation of a strategy that improperly elevated

-29-

financial goals over process safety." (Compl. ¶ 236.) This allegation is insufficient as a matter of law. *See Livermore*, 2010 WL 3583999, at *3 (rejecting allegation that director defendant who earned almost $20 million in compensation over two-year period "is incapable of independently and disinterestedly considering a demand to commence and vigorously prosecute this action against those defendants who control his annual compensation."); *In re Dow Chem. Co. Deriv. Litig.*, No. 4349-CC, 2010 WL 66769, at *8 (Del. Ch. Jan. 11, 2010) (allegation that "three inside directors . . . depend for their livelihood on" nominal corporate defendant is insufficient to establish that those directors were not independent and disinterested); *In re Goldman Sachs Mutual Funds*, No. 04-Civ-2567(NRB), 2006 WL 126772, at *11 (S.D.N.Y. Jan. 17, 2006) (general "allegations of substantial compensation are insufficient" to establish demand futility).

Similarly, plaintiffs attempt to group certain individual defendants based on when they were appointed to BP's Board of Directors or on their membership on certain Board committees. (*See*, *e.g.*, Compl. ¶¶ 234-37, 239-46.) Again, such generalized allegations are no substitute for the particularized, director-specific allegations required by Rule 23.1. As one court explained, "general allegations, based simply on the fact that a defendant was a member of a board or committee, without more, are insufficient as a matter of law." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust* v. *Lundgren*, 579 F. Supp. 2d 520, 532 (S.D.N.Y. 2008). Nor do plaintiffs' conclusory allegations that certain groupings of directors "were repeatedly informed" of various events based on when they were appointed to the Board suffice to demonstrate the requisite substantial likelihood of director liability. *See In re ITT*, 653 F. Supp. 2d at 462 ("Simply alleging that wrongdoing continued at ITT and that ITT fought the Government investigation says nothing about what the individual Directors did or did not do to

prevent or cause these actions and, therefore, does not establish that a majority of the Directors consciously disregarded their duty to monitor and oversee ITT's operations."); *see also In re Intel Corp. Deriv. Litig.*, 621 F. Supp. 2d 165, 174 (D. Del. 2009) (substantial likelihood of liability not alleged and demand not excused where plaintiff identified "red flags" but "fail[ed] to identify what the Directors actually knew about the 'red flags' and how they responded to them"); *In re Citigroup*, 964 A.2d at 129 (plaintiffs failed to allege demand futility based on oversight failure where plaintiffs did not "adequately explain what the director defendants actually did or failed to do").

In sum, plaintiffs fail to allege particularized facts specific to each member of BP's Board of Directors demonstrating that a majority of the Board could not have exercised independent and disinterested business judgment in responding to a demand to bring this action. Accordingly, if the Court were to conclude that this action is not governed by U.K. law, the Complaint still should be dismissed because plaintiffs have not adequately alleged demand futility under Rule 23.1 and Louisiana law.[18]

## IV.   PLAINTIFFS HAVE FAILED ADEQUATELY TO ALLEGE THAT THIS COURT HAS PERSONAL JURISDICTION OVER THE INDIVIDUAL DEFENDANTS.

Plaintiffs bear the burden of pleading facts that make out a *prima facie* case of personal jurisdiction over each defendant.  *See Johnston* v. *Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008).  In reviewing a motion under Rule 12(b)(2), the Court must accept plaintiffs' uncontroverted factual allegations as true and resolve all factual disputes in plaintiffs' favor.  *Panda Brandywine Corp.* v. *Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001).

---

[18]      Plaintiffs' claims against defendants McKay and Malone should be dismissed on the additional ground that plaintiffs fail to allege any reason at all—let alone with the requisite particularity—why a demand on the BP Board to bring claims against those two non-director defendants would be futile.

The Fifth Circuit has emphasized, however, that "the prima-facie-case requirement does not require the court to credit *conclusory* allegations, even if uncontroverted." *Id.* at 869 (emphasis added).

In cases transferred pursuant to 28 U.S.C. § 1407, the transferee federal court "ha[s] the same in personam jurisdiction as the transferor . . . federal court, and no more." *In re Enron Corp. Sec., Deriv. & "ERISA" Litig.*, 511 F. Supp. 2d 742, 789 (S.D. Tex. 2005). This Court thus may exercise personal jurisdiction over the individual defendants only to the same extent that the U.S. District Court for the Eastern District of Louisiana could.

When federal jurisdiction exists based on diversity of citizenship, as is the case here, a federal court "may exercise personal jurisdiction over a nonresident defendant if (i) the long-arm statute of the forum state confers personal jurisdiction over that defendant; and (ii) exercise of such jurisdiction by the forum is consistent with due process." *Latshaw* v. *Johnston*, 167 F.3d 208, 211 (5th Cir. 1999). Because Louisiana's long-arm statute extends to the limits of federal due process, *First Guar. Bank of Hammond* v. *Attorneys Liab. Assur. Soc., Ltd.*, 515 So. 2d 1080, 1083 (La. 1987), the Due Process Clause defines the scope of *in personam* jurisdiction in this case. Under the Due Process Clause, a court may exercise personal jurisdiction over a nonresident defendant "when (1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with the forum state, and (2) the exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice." *Panda Brandywine*, 253 F.3d at 867 (internal quotation marks omitted). "Minimum contacts can be established either through contacts sufficient to assert specific jurisdiction, or contacts sufficient to assert general jurisdiction." *Id.* (internal quotation marks omitted).

-32-

Plaintiffs fail to satisfy their burden of pleading facts sufficient to establish a *prima facie* case of personal jurisdiction over even one of the individual defendants, most of whom are foreign nationals. Although plaintiffs devote pages of their Complaint to detailing dozens of connections between *BP* and the United States (Compl. ¶¶ 211-20), plaintiffs make no attempt whatsoever to allege any jurisdictional contacts between the individual defendants and the State of Louisiana. The Complaint thus should be dismissed for lack of personal jurisdiction.

### A. Plaintiffs Fail to Allege Facts Sufficient to Establish General Jurisdiction Over Any Individual Defendant.

The Fifth Circuit "has consistently imposed the high standard set by the Supreme Court when ruling on general jurisdiction issues." *Johnston*, 523 F.3d at 611. To establish general jurisdiction, plaintiffs must allege facts demonstrating that "a non-resident defendant's contacts with the forum state are substantial, continuous, and systematic." *Id.* at 609. "[V]ague and overgeneralized assertions that give no indication as to the extent, duration, or frequency of contacts are insufficient to support general jurisdiction." *Id.* at 610.

Plaintiffs do not allege any factual predicate for an assertion of general jurisdiction over any of the individual defendants. In fact, they make no attempt to identify even a single specific contact between any individual defendant and the State of Louisiana, and they admit that ten of the seventeen individual defendants are European nationals (most of them British). Although plaintiffs make the bare and conclusory allegation that eight individual defendants "had extensive contacts" with Louisiana, such "vague and overgeneralized assertions" are "insufficient to support general jurisdiction." *Id.*

### B. Plaintiffs Fail to Allege Facts Sufficient to Establish Specific Jurisdiction Over Any Individual Defendant.

Plaintiffs also fail to allege a *prima facie* case of specific jurisdiction over the individual defendants. A court may exercise specific jurisdiction "[w]hen a cause of action

-33-

arises out of a defendant's purposeful contacts with the forum." *Dalton* v. *R & W Marine, Inc.*, 897 F.2d 1359, 1361 (5th Cir. 1990) (citing *World-Wide Volkswagen Corp.* v. *Woodson*, 444 U.S. 286 (1980)).

Plaintiffs make no allegation that any of the alleged breaches of fiduciary duty that are the subject of their claims arose out of the individual defendants' contacts with Louisiana.  The Complaint does not and cannot allege that any of the individual defendants' conduct as directors and officers of BP—an English company headquartered in London— occurred in Louisiana.  Because the Complaint does not identify a single specific contact by any of the individual defendants with Louisiana—let alone any contact that gave rise to plaintiffs' derivative claims—there can be no basis for specific jurisdiction, and dismissal is warranted.[19]

*Ham* v. *La Cienega Music Co.*, 4 F.3d 413, 416 (5th Cir. 1993).

---

[19]    Because plaintiffs have made no attempt to establish that the individual defendants have the minimum contacts with Louisiana, the Court need not determine whether the exercise of personal jurisdiction here would offend traditional notions of fair play and substantial justice.  *Felch* v. *Transportes Lar-Mex SA de CV*, 92 F.3d 320, 329 n.20 (5th Cir. 1996).  If such an inquiry were required, consideration of "the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief" would be appropriate.  *Asahi Metal Indus. Co.* v. *Superior Court of Cal.*, 480 U.S. 102, 113 (1987).  "[A]side from its role as the forum state Louisiana has no interest in this litigation" brought under English law on behalf of an English company against mostly English and other foreign national defendants, and that can and should be brought in an English court.  *See Dalton*, 897 F.2d at 1363.  As a result, traditional notions of fair play and substantial justice likewise would preclude the exercise of personal jurisdiction in this case.

-34-

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed in its entirety without leave to amend.

Dated:  March 21, 2011
       Houston, Texas

OF COUNSEL:

Daryl A. Libow (pro hac vice)
Bruce W. Hickey
SULLIVAN & CROMWELL LLP
1701 Pennsylvania Avenue, N.W.
Washington, D.C.  20006
Telephone: (202) 956-7500
libowd@sullcrom.com
hickeyb@sullcrom.com

Richard C. Pepperman, II (pro hac vice)
Marc De Leeuw (pro hac vice)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Telephone: (212) 558-4000
peppermanr@sullcrom.com
deleeuwm@sullcrom.com

Respectfully submitted,

*s/Thomas W. Taylor*
Thomas W. Taylor
Texas State Bar No. 19723875
ANDREWS KURTH LLP
600 Travis, Suite 4200
Houston, Texas  77002
Telephone: (713) 220-4200
Facsimile: (713) 220-4285
ttaylor@andrewskurth.com

*Attorney-in-charge for Nominal Defendant BP p.l.c. and Defendants Iain C. Conn, Robert W. Dudley, Byron E. Grote, Anthony B. Hayward, Andy G. Inglis, Antony Burgmans, Cynthia B. Carroll, William M. Castell, George David, Erroll B. Davis, Jr., Douglas J. Flint, DeAnne S. Julius, Ian M.G. Prosser, Peter Sutherland, Carl-Henric Svanberg, H. Lamar McKay, and Robert A. Malone*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing Motion has been served by electronic CM/ECF filing, on this 21st day of March, 2011.

*s/Thomas W. Taylor*
Thomas W. Taylor

-35-