Exhibit A

# *In re BP Shareholder Derivative Litigation,* MDL No. 2185

## *Defendants' Motion to Dismiss*

*June 17, 2011*

# *Plaintiffs Seek to Sue on Behalf of BP*

- This is a shareholder derivative action brought under U.K. law on behalf of BP, a company incorporated in England and headquartered in London.

- Plaintiffs seek to assert claims for breach of fiduciary duty under U.K. law on behalf of BP against current and former officers and directors of BP and a BP subsidiary.

- As a threshold matter, this Court must determine whether plaintiffs — ten BP shareholders — have standing to litigate corporate causes of action that belong to BP.

# *Standing to Sue Is a Critical Threshold Issue in All Shareholder Derivative Actions*

- In a derivative action, a shareholder seeks to supplant the board's managerial authority and commence litigation on behalf of the corporation.

- Given the extraordinary nature of derivative actions, every jurisdiction imposes some precondition before a shareholder can assert a corporate cause of action.

- **<u>Plaintiffs agree</u>:** "[D]ifferent jurisdictions make different policy judgments about when shareholders or directors should have decision-making authority over the institution of corporate causes of action."  (Opp'n at 15.)

- Most U.S. jurisdictions require a shareholder to make a pre-suit demand on the company's board of directors.

# Plaintiffs' Standing to Sue Derivatively on Behalf of BP Is Governed by U.K. Law

- Under the internal affairs doctrine, a shareholder's standing to sue derivatively is governed by a single law — *the law of the place of incorporation*.

- "The internal affairs doctrine . . . recognizes that only one State should have authority to regulate a corporation's internal affairs . . . because otherwise a corporation could be faced with conflicting demands." *Edgar* v. *MITE Corp.*, 457 U.S. 624, 645 (1982).

- There is no dispute that BP is incorporated under the laws of England and Wales. (Compl. ¶ 30.)

- Plaintiffs thus acknowledge that their standing to sue derivatively on behalf of BP is governed by U.K. law.

3

# *U.K. Companies Act 2006 Governs Derivative Proceedings on Behalf of English Companies*

- Section 261(1) states: "A member of a company who brings a derivative claim under this Chapter ***must*** apply to the court for permission . . . to continue it."

- Section 1156(1)(a) states: "in the Companies Acts 'the court' means . . . in England and Wales, the High Court."

- This "judicial permission" requirement is the centerpiece of the English statutory scheme that took effect in 2007. There are ***no statutory exceptions*** to this requirement.

- Plaintiffs agree that Section 261 reflects "a policy choice" to depart from a pre-suit demand requirement. (Opp'n at 17.)  The gating function is assigned to the High Court, not the board of directors.

4

# *Plaintiff Has Not Obtained the Requisite Judicial Permission to Sue on Behalf of BP*

- Plaintiff has not sought, much less obtained, permission to sue from the English High Court.

- Other U.S. courts have dismissed derivative actions brought on behalf of foreign corporations because the shareholder did not obtain leave of a specified court as required by a foreign statute.

- *Bruhl* v. *Kingate Global Fund Ltd.*, No. 601526/2009 (N.Y. Sup. Ct. Jan. 25, 2010); *Vaughn* v. *LJ Int'l, Inc.*, 94 Cal. Rptr. 3d 166 (Cal. Ct. App. 2009); *Locals 302 & 612 of Int'l Union of Operating Eng'rs* v. *Blanchard*, 2005 WL 2063852 (S.D.N.Y. Aug. 25 2005).

# *Requirement Is Not Limited to Cases in England and Wales or Northern Ireland*

- Plaintiffs point to Section 260(1), which states: "This Chapter applies to proceedings in England and Wales or Northern Ireland . . . ."

- Part 11 of the Companies Act, titled "Derivative Claims and Proceedings by Members," is divided into two chapters.

- The quoted language distinguishes Chapter 1 (Derivative Claims in England and Wales or Northern Ireland) from Chapter 2 (Derivative Proceedings in Scotland).

- Section 260(1) does not prohibit the extraterritorial application of the judicial permission requirement under foreign choice-of-law rules.

# *Requirement Concerns Standing to Sue and Thus Is Substantive, Not Procedural*

- Plaintiffs argue that the Companies Act's judicial permission requirement is "a U.K. procedural rule." (Opp'n at 3.)

- Plaintiffs agree that "the law of the forum jurisdiction determines whether an issue in the action is substantive or procedural in nature."  (Opp'n at 19.)

- As a result, plaintiffs' reliance on decisions from England, Hong Kong and Australia is misplaced.

- U.S. courts have uniformly held that similar preconditions to shareholder derivative actions are substantive, not procedural, because they concern standing to sue.

# *Vaughn* v. *LJ Int'l, Inc.*, 94 Cal. Rptr. 3d 166 (Cal. Ct. App. 2009)

- Section 184C of the BVI Companies Act is substantively identical to Section 261(1) of the U.K. Companies Act. It "limits entitlement to sue to those shareholders who have complied with its provisions."  94 Cal. Rptr. at 171.

- "[T]he resulting decision as to presence or absence of **standing to bring an action** is most appropriately characterized as resolving a **substantive right**."  *Id.*

- The court relied on "cases classifying as substantive a requirement that **shareholders make a demand on the board of directors** before bringing a derivative action."  *Id.* at 173.

8

# *Plaintiffs' Effort to Distinguish <u>Vaughn</u> Is Unavailing*

- Plaintiffs' English law expert simply asserts that "*Vaughn* does not accurately state the law." (Adair Decl. ¶ 37.)

- Plaintiffs attempt to distinguish *Vaughn* based on differences in the statutes' language: the BVI Act refers to permission to "bring" proceedings, whereas the U.K. Act refers to permission to "continue" them.

- The BVI Act distinguishes between permission to "bring proceedings" and to "intervene in proceedings."

- The U.K. Act assumes that a shareholder will initiate derivative proceedings by first filing a derivative claim and then asking "the court for permission . . . to continue it."

# *Hausman v. Buckley, 299 F.2d 696 (2d Cir. 1962)*

- At issue is "the right of a stockholder of a foreign corporation to participate in its management, *i.e.*, to bring a lawsuit on the corporation's behalf."  *Id*. at 700.

- The relevant question is whether a stockholder's right to sue "involves no more than compliance with procedural requirements."  *Id*. at 701.

- "The issue is not just 'who' may maintain an action or 'how' it will be brought, but '**if**' it will be brought."  *Id*.

- "[T]he condition imposed by Venezuelan law on the right to enforce corporate claims goes to the substance of that right, and cannot be treated as dealing with the mere procedure by which the claims are enforced."  *Id*.

10

# *Analogous Pre-Suit Demand Requirement Is Substantive*

- Under the Companies Act, the English High Court makes the initial determination of whether derivative litigation is in the best interest of the corporation, rather than the board of directors as is the case in Louisiana and Texas.

- It is well-settled that "the demand doctrine in delimiting the respective powers of the individual shareholder and of the directors to control corporate litigation clearly is a matter of 'substance,' not 'procedure.'" *Kamen* v. *Kemper Fin. Servs., Inc.,* 500 U.S. 90, 96-97 (1991).

- By the same reasoning, the English requirement of pre-suit judicial permission (England's alternative to the demand doctrine) clearly is a matter of substance.

11

# *Plaintiffs' Reliance on <u>Messinger</u> Is Misplaced*

- Plaintiffs argue that "*Vaughn* is directly refuted by" *Messinger* v. *United Canso Oil & Gas Ltd.*, 486 F. Supp. 788 (D. Conn. 1980).  (Opp'n at 20.)

- In *Blanchard*, the court rejected the language from *Messinger* as dicta, noting that "the *Messinger* court did not address any conflict of law principles and failed even to mention *Hausman*."  2005 WL 2063852, at *5 n.7.

- The *Blanchard* court held:  "[T]here is ***no doubt*** that Canadian law applies to Plaintiffs' claims and that . . . the CBCA requires plaintiffs to seek leave of a Canadian court specifically enumerated in . . . the CBCA."  *Id*. at *4.

# *Plaintiff's Are Unclear as to What Rule of Law, If Any, Governs Their Standing to Sue*

- Plaintiffs' opposition does not address what rule of law governs their standing to sue derivatively on behalf of BP *if* Section 261(1) of the Companies Act does not apply.

- Plaintiffs' expert argues that "the common law derivative action" survived the passage of the Companies Act outside of England, Wales and Northern Ireland. (Adair Decl. ¶ 55.)

- Mr. Adair thus contends that plaintiffs' standing to sue is governed by the common-law rule of *Foss* v. *Harbottle*, even though his textbook describes the Companies Act "as having abolished the common law derivative action." (Adair Decl. ¶ 55.)

13

# *Plaintiffs Clearly Lack Standing to Bring a Derivative Action under <u>Foss</u> v. <u>Harbottle</u>*

- Applying the "proper plaintiff principle," the rule of *Foss* v. *Harbottle* generally prohibited shareholders from asserting derivative claims on behalf of English companies. The proper plaintiff to assert a corporate cause of action is the corporation.

- "There are three narrow exceptions to the *Foss v. Harbottle* rule." *In re BP p.l.c. Derivative Litig.*, 507 F. Supp. 2d 302, 311 (S.D.N.Y. 2007).

- Applying *Foss* v. *Harbottle*, U.S. courts have routinely dismissed derivative actions brought on behalf of English corporations for lack of standing. (BP Reply at 12-13 (citing cases).)

14

# The "Ultra Vires" Exception to the Rule of *Foss* v. *Harbottle* Does Not Apply

- The parties experts **agree** that the *ultra vires* exception applies only to acts that are beyond the capacity of the company as established by its memorandum of association or prohibited by the statute to which the company owes its existence.  (Adair Decl. ¶ 63; Suppl. Moore Decl. ¶ 53.)

- Plaintiffs do not allege any acts that could be considered *ultra vires* for purposes of this exception.

- *City of Harper Woods Emps.' Ret. Sys.* v. *Olver*, 589 F.3d 1292, 1303 (D.C. Cir. 2009) (*ultra vires* exception does not apply because plaintiff "did not allege that BAE lacked the corporate capacity to make payments to [Saudi prince]").

# *English Law Does Not Recognize a Separate "Illegality" Exception to <u>Foss</u> v. <u>Harbottle</u>*

- Mr. Adair appears to argue that there is a fourth exception to *Foss* v. *Harbottle* for "illegal acts" — even if they are not *ultra vires*.

- He asserts that "an illegal act cannot be ratified by a simple majority of the shareholders" and thus falls outside of the common-law bar.  (Adair Decl. ¶ 70.)

- To start, plaintiffs allege no illegal acts by the individual defendants, only breaches of their fiduciary duty of oversight.

- In any event, under English law, illegal acts can be ratified by a company's shareholders unless they are *ultra vires*. (Supp. Moore Decl. ¶ 74.)

16

# *The D.C. Circuit Rejected Mr. Adair's Position on "Illegal Acts" in* <u>*Harper Woods*</u>

- "Because Harper Woods has failed to demonstrate that, under authoritative English law, the alleged activities of the defendants — whether construed as breach of fiduciary duties or illegal acts — are incapable of ratification, the complaint falls within the rule of *Foss* v. *Harbottle . . . .*"  589 F.3d at 1303.

- At issue was ***criminal conduct***:  the payment of "more than $2 billion in bribes and kickbacks to Prince Bandar Bin Sultan of Saudi Arabia in order to obtain a large contract."  *Id.* at 1295.

- Mr. Adair responds that "this point was wrongly decided by the court in *Harper Woods*." (Adair Decl. ¶ 87.)

17

# *Alternatively, the Complaint Should Be Dismissed Based on <u>Forum</u> <u>Non</u> <u>Conveniens</u>*

- Plaintiffs' straw-man argument: "Defendants next seek dismissal based on *forum non conveniens*, asserting that because BP is incorporated in England, Defendants may be sued *only* there." (Opp'n at 23.)

- Defendants' position is that an action that seeks to redress injury allegedly sustained by an English company as a result of alleged breaches of fiduciary duty under English law by the company's directors in London is best resolved by the English High Court.

- The High Court is the forum with the greatest interest in the governance of English corporations and best positioned to construe and apply the Companies Act.

# *The High Court Provides an Alternative Forum for This Derivative Action*

- Plaintiffs concede that their choice of forum is entitled to less deference because they are suing in a representative capacity.  (Opp'n at 24 n.17.)  The real party in interest here is ***BP***.

- U.S. courts have routinely found that English courts are a suitable alternative forum in dismissing cases on *forum non conveniens* grounds.  (Defs.' Opening Mem. at 15 (citing cases).)

- Martin Moore's declaration confirms that the High Court is an alternative forum for these derivative claims. (Moore Decl. ¶¶ 39-42.)  The Companies Act makes explicit that the High Court is an alternative forum for derivative proceedings on behalf of an English company.

# *Relevant Public and Private Interest Factors Weigh in Favor of Dismissal*

- Plaintiffs refer to the "extensive record" in the Gulf states, "the large number of American defendants," and the interest of a "local jury" in deciding this case.  (Opp'n at 26-28.)

- This argument misstates the nature of this action.

  - 9 of the 17 defendants are not American.

  - This derivative action concerns whether BP's directors breached their duty of oversight in managing the company.

  - The location of most of the critical documents concerning the board and its committees is BP's London headquarters.

  - U.K. has the greatest interest in whether the directors of a U.K. company breached their duties under U.K. law.

# *Plaintiffs Must Establish a <u>Prima Facie</u> Case of Personal Jurisdiction Over Each Defendant*

- Plaintiffs bear the burden of establishing a *prima facie* case of personal jurisdiction over each individual defendant.

- Plaintiffs concede that they must show that "Defendants have 'minimum contacts' with Louisiana." (Opp'n at 30.)

- The complaint alleges no jurisdictional contacts between the individual defendants and Louisiana.

- Plaintiffs' opposition misstates the issue: "Defendants have a long history of continuous and systematic **contacts with the United States in general and the Gulf region in particular**." (Opp'n at 30.)

# *Plaintiffs Have Failed to Satisfy Their Burden on Personal Jurisdiction*

- Plaintiffs contend that three defendants (Dudley, Inglis and McKay) gave "recent speeches in Louisiana." (Opp'n at 31.) These speeches are insufficient to establish general or specific jurisdiction over these defendants.

- Plaintiffs argue that defendants' decisions caused injury in Louisiana (albeit not injury to BP). (Opp'n at 32.)

- Directors are not subject to personal jurisdiction in a forum with which they have no contacts based on an allegation that their decision-making led to corporate action that caused injury in that forum.

- Otherwise directors of a multinational company would be subject to personal jurisdiction in any country in which the company operates.