IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |
|---|---|
| ) | |
| IN RE BP SHAREHOLDER DERIVATIVE ) | MDL NO. 2185 |
| LITIGATION ) | |
| ) | Case No. 4:10-cv-03447 |
| ) | |
| ) | |
| ) | |
| In Re: BP P.L.C. SECURITIES ) | Civil Action No. 4:10-md-2185 |
| LITIGATION ) | |
| ) | HON. KEITH P. ELLISON |
| ) | |
| ) | |

**DEFENDANTS' RESPONSE TO
DERIVATIVE PLAINTIFFS' SUPPLEMENTAL BRIEF**

OF COUNSEL:

Daryl A. Libow (pro hac vice)
Bruce W. Hickey
SULLIVAN & CROMWELL LLP
1701 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Telephone: (202) 956-7500
libowd@sullcrom.com
hickeyb@sullcrom.com


Richard C. Pepperman, II (pro hac vice)
Marc De Leeuw (pro hac vice)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
peppermanr@sullcrom.com
deleeuwm@sullcrom.com

Thomas W. Taylor (S.D. No. 3906)
Texas State Bar No. 19723875
ANDREWS KURTH LLP
600 Travis, Suite 4200
Houston, Texas 77002
Telephone: (713) 220-4200
Facsimile:   (713) 220-4285
ttaylor@andrewskurth.com

*Attorney-in-charge for Nominal Defendant
BP p.l.c. and Defendants Iain C. Conn, Robert
W. Dudley, Byron E. Grote, Anthony B.
Hayward, Andy G. Inglis, Antony Burgmans,
Cynthia B. Carroll, William M. Castell,
George David, Erroll B. Davis, Jr., Douglas J.
Flint, DeAnne S. Julius, Ian M.G. Prosser,
Peter Sutherland, Carl-Henric Svanberg,
H. Lamar McKay, and Robert A. Malone*

## TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................................1

ARGUMENT .....................................................................................................................3

I.    ONLY THE ENGLISH HIGH COURT IS AUTHORIZED TO GRANT PLAINTIFFS PERMISSION TO SUE DERIVATIVELY ....................................3

II.    PLAINTIFFS ALSO LACK STANDING UNDER THE ABOLISHED COMMON-LAW RULE OF *FOSS* V. *HARBOTTLE*............................................8

III.    ALTERNATIVELY, PLAINTIFFS' NEW ARGUMENTS FURTHER SUPPORT  DISMISSAL UNDER THE *FORUM NON CONVENIENS* DOCTRINE ................................................................13

IV.    PLAINTIFFS ARE NOT ENTITLED TO JURISDICTIONAL DISCOVERY..........................................................................................15

CONCLUSION...................................................................................................................17

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Australian Agricultural Co.* v. *Oatmont Pty*,
  [1992] 8 ACSR ...................................................................................12

*Batchelder* v. *Kawamoto*,
  147 F.3d 915 (9th Cir. 1998) ...........................................................15

*Bonvillain* v. *La. Land & Exploration Co.*,
  702 F. Supp. 2d 667 (E.D. La. 2010) ..........................................2, 16

*Bruhl* v. *Kingate Global Funds Ltd.*,
  No. 60152609 (N.Y. Sup. Ct. Jan. 25, 2010) ...................................4

*City of Harper Woods Employees' Retirement System* v. *Olver*,
  589 F.3d 1292 (D.C. Dir. 2009).......................................10, 11, 12, 15

*CMIA Partners Equity Ltd.* v. *O'Neill*,
  920 N.Y.S.2d 240 (N.Y. Sup. Ct. 2010) ..........................................15

*Cockburn* v. *Newbridge Sanitary Steam Laundry Company Ltd.*,
  [1915] 1 IR 237.................................................................................12

*Edwards* v. *Halliwell*
  [1950] 2 All ER 1064.........................................................................11

*Feiner Family Trust* v. *VBI Corp.*,
  2007 WL 2615448 (S.D.N.Y. Sept. 11, 2007)...................................15

*Goldstein* v. *Conn*,
  Cause No. 09 CV 1352
  (Dist. Ct. of Galveston Cnty., Tex., 122nd Jud. Dist., Aug. 4, 2011)......................4

*Guidry* v. *U.S. Tobacco Co.*,
  188 F.3d 619 (5th Cir. 1999) ............................................................17

*Gulf Oil Corp.* v. *Gilbert*,
  330 U.S. 501 (1947)...........................................................................14

*Hausman* v. *Buckley*,
  299 F.2d 696 (2d Cir. 1962)............................................................2, 7

*In re Banco Santander Securities-Optimal Litigation*,
  732 F. Supp. 2d 1305 (S.D. Fla. 2010) ........................................14, 15

*In re BP Deriviative Litigation*,
    507 F. Supp. 2d 302 (S.D.N.Y. 2007)...............................................................9, 15

*In re InfoSonics Corp. Derivative Litigation*,
    No. 06cv1336, 2007 WL 2572276 (S.D. Cal. Sept. 4, 2007) ...................................16

*Kamen* v. *Kemper Financial Services, Inc.*,
    500 U.S. 90 (1991).........................................................................................................7

*Konamaneni* v. *Rolls Royce Industrial Power (India) Ltd.*,
    [2002] 1 W.L.R. 1269 (Ch).............................................................................................8

*Locals 302 & 612 of the International Union of Operating Engineers* v. *Blanchard*,
    2005 U.S. Dist. LEXIS 17679 (S.D.N.Y. Aug. 25, 2005).......................................3, 7

*Mehlenbacher ex rel. Asconii Corp.* v. *Jitaru*,
    2005 WL 4585859 (M.D. Fla. 2005) ...........................................................................16

*Powell* v. *Kempton Park Racecourse*,
    [1897] 2 QB 242 ...........................................................................................................11

*Ruggiero* v. *FuturaGene, plc*,
    948 A.2d 1124 (Del. Ch. 2008).....................................................................................17

*Saqui* v. *Pride Centeral America, LLC*,
    595 F.3d 206 (5th Cir. 2010) ........................................................................................14

*Sigalas* v. *Lido Maritime, Inc.*,
    776 F.2d 1512 (11th Cir. 1985) ....................................................................................14

*Vaughn* v. *LJ International, Inc.*,
    94 Cal. Rptr. 3d 166 (Cal. Ct. App. 2009) .............................................................2, 3, 7

*Winn* v. *Schafer*,
    499 F. Supp. 2d 390 (S.D.N.Y. 2007)...........................................................................12

## STATUTES

United Kingdom Companies Act, 2006.............................................................. *passim*

## OTHER AUTHORITIES

Alan Steinfeld et al., Blackstone's Guide to the Companies Act 2006 (2007).........................9, 11

Nominal defendant BP p.l.c. ("BP") and all of the individual defendants (collectively, "Defendants") respectfully submit this response to Plaintiffs' supplemental brief in opposition to Defendants' motion to dismiss.

## INTRODUCTION

Although styled a "supplemental brief," Plaintiffs' 25-page submission is nothing short of a complete "do over" of their opposition to Defendants' motion to dismiss in which they attempt to mischaracterize Defendants' consistently held positions, walk away from their prior arguments, and present entirely new ones. Like the arguments in their initial opposition, however, Plaintiffs' new arguments are contrary to controlling U.S. and U.K. law. Plaintiffs themselves acknowledge that "federal judges will in the majority of instances decline to assert jurisdiction over a derivative suit involving a foreign company, either under the foreign company's law of incorporation or, more often, in applying the *forum non conveniens* doctrine." (Supplemental Br. at 2.) Plaintiffs' attempts to avoid that logical conclusion here by arguing that this case is "*sui generis*" (*id.*) are fatally flawed, and Plaintiffs' "supplemental" brief provides no basis to sustain this derivative action.

First, essentially abandoning their original argument that the U.K. Companies Act's requirement of pre-suit judicial permission in derivative actions does not apply outside of England, Wales and Northern Ireland, Plaintiffs now contend that this Court can give them the requisite permission to sue on behalf of BP, even though the Companies Act expressly defines "the court" for purposes of its provisions as the High Court of England. U.K. Companies Act 2006 ("Companies Act") § 1156(1)(a). In support of this new argument, Plaintiffs erroneously assert that Defendants conceded at oral argument that "*this Court* could apply the elements of Sections 260-63 [of the Companies Act] to determine whether this Action should proceed."

(Supplemental Br. at 5 (emphasis in original).)  Defendants conceded no such thing.  Throughout this litigation, both Defendants and their U.K. law expert, Martin Moore, have consistently taken the position that only the English High Court is authorized to grant shareholders permission to pursue derivative claims on behalf of an English company because of the definition of "the court" found in Section 1156(1)(a) of the Companies Act.  Because this requirement is substantive, not procedural, *Hausman* v. *Buckley*, 299 F.2d 696, 701 (2d Cir. 1962); *Vaughn* v. *LJ Int'l, Inc.*, 94 Cal. Rptr. 3d 166, 171 (Cal. Ct. App. 2009), Plaintiffs' failure to obtain permission to sue on behalf of BP from the English High Court is fatal to their ability to maintain this derivative action.

Second, Plaintiffs urge this Court to disregard the Companies Act entirely and instead apply the English common-law rule of *Foss* v. *Harbottle*, even though their own U.K. law expert, Stuart Adair, acknowledges that Parliament sought to abolish that rule when it enacted the provisions of the Companies Act governing derivative claims.  Recognizing that the restrictive rule of *Foss* v. *Harbottle* would be fatal to their claims, Plaintiffs attempt to create a new "illegal acts" exception to that rule that their own expert, until submitting his declaration in this case, did not recognize.  Plaintiffs' attempt to establish standing to sue under *Foss* v. *Harbottle* finds no support in either English law or the numerous U.S. decisions dismissing derivative actions under the prior common-law regime.

Finally, Plaintiffs' request for jurisdictional discovery is meritless and inconsistent with their statement at oral argument that "we do not believe we need it."  (Hr'g Tr. at 98:2.) Plaintiffs' failure to allege a *prima facie* case of personal jurisdiction over any of the individual defendants precludes their attempt now "to conduct a fishing expedition in order to make a case." *Bonvillain* v. *La. Land & Exploration Co.*, 702 F. Supp. 2d 667, 686 (E.D. La. 2010).  In any

event, this Court need not address personal jurisdiction if it concludes that Plaintiffs lack

standing, which they clearly do under governing English law.

## ARGUMENT

### I.   ONLY THE ENGLISH HIGH COURT IS AUTHORIZED TO GRANT PLAINTIFFS PERMISSION TO SUE DERIVATIVELY.

Plaintiffs agree that their standing to assert derivative claims on behalf of BP is governed

by English law.  Section 261 of the Companies Act provides that a shareholder of an English

company "who brings a derivative claim . . . must apply to the court for permission . . . to

continue it."  Section 1156(1)(a) of the Act states:  "Except as otherwise provided, in the

Companies Act, 'the court' means—in England and Wales, the High Court or . . . a county

court."[1]  Because Plaintiffs have not received permission to pursue derivative claims on behalf of

BP from "the court" specified in the Companies Act, their Complaint should be dismissed for

lack of standing.

Notwithstanding Section 1156(a)(1)'s definition of "the court," Plaintiffs assert that "the

only rational construction of the Companies Act is that the 'court' in Section 261 refers to the

court of the foreign jurisdiction where the case is filed, and that in the U.K. itself, the designated

court for derivative suits is the High Court."  (Supplemental Br. at 6.)  Plaintiffs cite no authority

for their construction of the Companies Act, which is contrary to the rulings of every other U.S.

court that has applied similar requirements of foreign statutes in derivative actions.  *See Vaughn*,

94 Cal. Rptr. 3d at 168 ("A British Virgin Islands statute requires approval from the high court of

that jurisdiction before a shareholder may sue derivatively.  Here we hold that such approval was

required before the instant California lawsuit could proceed."); *Locals 302 & 612 of the Int'l*

---

[1] As Mr. Moore explains:  "In practice, a derivative claim of this type would be heard in the High Court.  Although there is no formal upper monetary limit on their jurisdiction, the County Courts are used only for relatively small claims."  (Moore Decl. ¶ 31.)

*Union of Operating Eng'rs* v. *Blanchard*, 2005 U.S. Dist. LEXIS 17679, *14 (S.D.N.Y. Aug. 25, 2005) ("[T]here is no doubt that Canadian law applies to Plaintiffs' claims and that Section 239 of the CBCA requires Plaintiffs to seek leave of a Canadian court specifically enumerated in Section 2 of the CBCA."); *Bruhl* v. *Kingate Global Funds Ltd.*, No. 60152609 (slip op.) (N.Y. Sup. Ct. Jan. 25, 2010) ("[T]his Court finds that BVI law applies here and . . . requires a shareholder-prospective plaintiff to obtain approval of the BVI High Court which [plaintiff] failed to do.").  Indeed, a state court in Galveston last month reached the same conclusion in another derivative action brought on behalf of BP.  *See Goldstein* v. *Conn*, Cause No. 09 CV 1352 (Dist. Ct. of Galveston Cnty., Tex., 122nd Jud. Dist., Aug. 4, 2011) (Conclusions of Law ¶ 15) ("Under the Companies Act, a shareholder seeking to sue derivatively on behalf of a company organized under the laws of England and Wales first must obtain permission to sue from a specified English court.").

Left with no legal support, Plaintiffs attempt to rely on nonexistent concessions supposedly made by Defendants during the June 17 oral argument and by Martin Moore in his supplemental declaration.  There were no such concessions.

***No Concessions at Oral Argument.***  Plaintiffs contend that "Defendants have abandoned their argument that *only* the English High Court can give judicial permission."  (Supplemental Br. at 5 (emphasis original).)  In support of this baseless contention, Plaintiffs rely on a single colloquy between Defendants' counsel and the Court at oral argument and a single sentence from Defendants' slide presentation, both explaining that Section 260(1) of the Companies Act does not limit the statute's judicial permission requirement to proceedings in England, Wales and Northern Ireland.  Based on these statements, Plaintiffs assert that Defendants "argu[ed] for the

first time that *this Court* could apply the elements of Sections 260-63 to determine whether this Action should proceed."  (*Id.* (emphasis in original).)  Plaintiffs are incorrect.

At the June 17 hearing, Defendants expressly rejected Plaintiffs' attempt to mischaracterize Defendants' position, emphasizing that "[t]he most important point I have to make . . . is that it is *not* our position that this Court should or can apply the Section 263 factors and determine whether or not permission to proceed."  (Hr'g Tr. at 74:12-15 (emphasis added).) Contrary to Plaintiffs' assertion in their supplemental brief, Defendants repeatedly explained at oral argument that the Companies Act authorizes *only* the English High Court to grant the required judicial permission to maintain a derivative action on behalf of an English company. (*Id*. at 10:5-9 ("And when it defined the words 'the Court' for purposes of the Companies Act as to which is the Court that should be providing the judicial permission, it was very clear that for England and Wales that that is the English High Court."); *id*. at 26:21-25 ("England made a decision that for a shareholder to sue, rather than making a demand on the board of directors, that what the shareholder needs to do is obtain permission from a specified court to sue.  And that's the High Court of England and Wales.").)

Defendants thus never "abandoned their argument that *only* the English High Court can give judicial permission" to sue under the Companies Act.  (Supplemental Br. at 5 (emphasis in original).)  In the statements to which Plaintiffs point (*see id*. at 5 & n.3), Defendants were responding to Plaintiffs' argument that the Companies Act's judicial permission requirement (Section 261) is subject to a geographical limitation imposed by Section 260(1).  (*See* Pls. Opp'n at 18 ("a federal court sitting in diversity has no reason or basis for applying Section 261" because Section 260(1) limits Section 261's applicability "to actions *initiated in certain parts of the U.K.*") (emphasis in original).)  Defendants' statements merely reiterated the points made at

length in Defendants' reply and at oral argument:  namely, that Section 260(1) does not impose any geographical limitation on the Companies Act's judicial permission requirement and that the applicability of that requirement in this Court instead is governed by the forum's choice-of-law rules.  It is those choice-of-law rules—the requirement of the internal affairs doctrine to apply the law of the place of incorporation—not the text of the Companies Act, that mandate the application of English law (and thus the Companies Act's judicial permission requirement) to Plaintiffs' derivative claims on behalf of an English company.

**No Concessions in Mr. Moore's Supplemental Declaration.**  Plaintiffs also mischaracterize several snippets from the supplemental declaration of Defendants' U.K. law expert, Martin Moore, asserting that Mr. Moore "disagreed" with Defendants' position that "'plaintiffs lack standing to sue derivatively under English law.'"  (Supplemental Br. at 4.)  Once again, the snippets of Mr. Moore's declaration quoted by Plaintiffs respond to the suggestion of Plaintiffs' U.K. law expert, Stuart Adair, that Mr. Moore had construed the Companies Act to apply outside the U.K by its own terms.  Mr. Moore explained that he has always maintained that the Companies Act is U.K. law, and that it is other jurisdictions' choice-of-law rules that govern whether or not to apply U.K. law.  (Moore Supplemental Decl. ¶ 5(a).)

For example, Plaintiffs assert that "Mr. Moore expressly rejected any suggestion that he was opining that 'English law requires that the plaintiffs in a foreign derivative action would have to seek permission to continue from the English Court.'"  (Supplemental Br. at 4-5 (quoting Moore Supplemental Decl. ¶ 5(a).)  The full quote reads:

> Mr. Adair proceeds on the assumption that I say that English law requires that the plaintiffs in a foreign derivative action would have to seek permission to continue from the English Court, and/or that the UK legislature has purported to lay down rules requiring the US Court to apply the test set out in s.263.  That is not the case. *As I observed in my First Declaration, the question of what test the*

> *US Court should apply (and whether it should take jurisdiction at*
> *all) are matters for the US Court and its own conflict of laws rules.*

(Moore Supplemental Decl. ¶ 5(a) (emphasis added).)

Plaintiffs similarly argue that Mr. Moore conceded that Sections 260-263 of the Companies Act contain "procedural rules" that this Court need not apply.  (Supplemental Br. at 6-7.)  As an initial matter, "the law of the forum jurisdiction determines whether an issue in the action is substantive or procedural in nature."  (Pls. Opp'n at 19 (internal quotation omitted).)  Courts in the U.S. have uniformly held that analogous preconditions to suing derivatively, although ostensibly procedural in nature, constitute substantive requirements that must be applied under the internal affairs doctrine.  *See*, *e.g.*, *Hausman*, 299 F.2d at 701 (holding that certain "procedural requirements" constituted a "condition imposed by Venezu[e]lan law on the right to enforce corporate claims [that] goes to the substance of that right, and cannot be treated as dealing with the mere procedure by which claims are enforced."); *Vaughn*, 94 Cal. Rptr. 3d at 171 ("Although those provisions [of BVI law requiring judicial permission to sue derivatively] do establish what may be called a procedure for compliance, the resulting decision as to presence or absence of standing to bring an action is most appropriately characterized as resolving a substantive right."); *see also Kamen* v. *Kemper Fin. Servs., Inc.*, 500 U.S. 90, 96-97 (1991) ("[T]he function of the demand doctrine in delimiting the respective powers of the individual shareholder and of the directors to control corporate litigation clearly is a matter of 'substance,' not 'procedure.'").  "As stated in *Hausman*, 'the issue is not just 'who' may maintain an action, or 'how' it will be brought, but 'if' it will be brought.'  No determination could be more substantive."  *Blanchard*, 2005 U.S. Dist. LEXIS 17679, at *23 (dismissing derivative claims on behalf of Canadian corporation for failure to obtain permission of Canadian court specified in Canadian statute).

Moreover, Plaintiffs' selective quotations of Mr. Moore's supplemental declaration misstate Mr. Moore's opinion.  As Mr. Moore explained, "[t]he implementation of a substantive rule through a procedural device inevitably makes it difficult to shoehorn the matter wholly into one category or the other, but the rule itself plainly has a character which is substantive." (Moore Supplemental Decl. ¶ 24.)  Mr. Moore stated that this conclusion accords with the approach English courts have taken when confronted with seemingly "procedural" foreign law requirements for bringing derivative actions.  Quoting Justice Collins in *Konamaneni* v. *Rolls Royce Industrial Power (India) Ltd.*, [2002] 1 W.L.R. 1269 (Ch)—a decision relied upon by Plaintiffs and their U.K. law expert—Mr. Moore observed that ostensibly procedural requirements can perform the substantive function of conferring rights:  "Although for purely English domestic purposes, the exceptions to the rule [of *Foss* v. *Harbottle*] have been regarded as a procedural device, I do not consider that in the international context their real nature is procedural.  They confer a right on shareholders to protect the value of their shares by giving them a right to sue and recover on behalf of the company."  (Moore Supplemental Decl. ¶ 21.)

## II.    PLAINTIFFS ALSO LACK STANDING UNDER THE ABOLISHED COMMON-LAW RULE OF *FOSS* V. *HARBOTTLE*.

Having foregone the opportunity in their original opposition to brief the issue of their standing under the English common-law rule of *Foss* v. *Harbottle*, Plaintiffs now argue in their supplemental brief that their claims fall within an exception to the common-law prohibition of derivative actions.  (Supplemental Br. at 15-22.)  Plaintiffs' arguments under the common law are unavailing for two reasons.

First, "the widely-recognised purpose and effect of the 2006 Act was to replace the rule in Foss v. Harbottle . . . .  As one leading text puts it, 'The rule in Foss v Harbottle is thus consigned to the dustbin.'"  (Moore Supplemental Decl. ¶ 36-37.)  Even Plaintiffs' U.K. law

expert acknowledged in his textbook that the Companies Act *abolished* the common-law

derivative action.  Alan Steinfeld et al., *Blackstone's Guide to the Companies Act 2006* 103

(2007) ("In 1997 the Law Commission recommended the introduction of a new statutory

derivative procedure . . . .  Chapter 1 of Part 11 of [the Companies Act] gives effect to that

recommendation by abolishing the common law derivative action and replacing it with a

statutory claim.").  Thus, the English common-law rule of *Foss* v. *Harbottle* does not apply to

derivative claims based on conduct occurring after the October 1, 2007 effective date of the

Companies Act.

Second, U.S. courts have consistently recognized that *Foss* v. *Harbottle* generally

*prohibited* shareholders from asserting derivative claims on behalf of English corporations, and

thus routinely dismissed derivative actions brought prior to effective date of the 2006 Act for

lack of standing.  (*See* Defs. Mem. in Supp. of  Mot. to Dismiss at 10; Moore Decl. ¶ 8; Defs.

Reply Br. at 12-13 & authorities cited therein; *see also* Supplemental Br. at 15 n.9 ("Under the

general rule of *Foss*, derivative actions may not be maintained unless the circumstances fall into

one of several exceptions").)  "There are three narrow exceptions to the *Foss v. Harbottle* rule:

(1) the alleged wrong is ultra vires, (2) the validity of the transaction is dependent upon approval

by a majority of shareholders greater than a simple majority, and (3) wrongdoers profited at the

expense of the company through self dealing *and* the wrongdoers are in voting control of the

company—i.e., fraud on the minority."  *In re BP Deriv. Litig*., 507 F. Supp. 2d 302, 311

(S.D.N.Y. 2007) (emphasis in original).  Plaintiffs' claims do not fall within any of those three

narrow exceptions.  (*See* Defs. Reply Br. at 12-15.)

Largely ignoring the body of case law arrayed against them, Plaintiffs insist that "the

conduct of the BP Board fits squarely with the types of illegal and/or *ultra vires* conduct that are

incapable of ratification and therefore actionable under the common law." (Supplemental Br, at 15.) As an initial matter, the *ultra vires* exception clearly does not apply here. *See City of Harper Woods Emps.' Ret. Sys.* v. *Olver*, 589 F.3d 1292, 1303 (D.C. Cir. 2009) (discussing *ultra vires* exception). That exception applies only to acts that were either "beyond the capacity of the company as established by its memorandum of association" or "prohibited by the statute to which the company owes its existence." (Moore Supplemental Decl. ¶ 53.) "The fact that an act or omission . . . involves an infringement of the general law does not make that act or omission *ultra vires* in the relevant sense." (*Id.* ¶ 55.) Even Plaintiffs' U.K. law expert, Mr. Adair, agrees that the terms illegality and *ultra vires* are not interchangeable and that *ultra vires* has a very specific and narrow meaning: "Acts are ultra vires an English company if they are beyond the powers of that company because they are (a) outside the objects of the company as set out in its Memorandum of Association or (b) prohibited by the statute to which the company owes its existence." (Adair Decl. ¶ 63.) Plaintiffs have not alleged any acts that could be considered *ultra vires* for purposes of *Foss* v. *Harbottle*. The gravamen of the Complaint is that BP's directors breached their fiduciary duties by failing to "provide effective oversight of the company's safety culture and major accident prevention program." (Compl. ¶ 134.) An alleged breach of a duty of oversight is not an *ultra vires* act under English law. (*See* Moore Supplemental Decl. ¶¶ 53-60.)

Contrary to Plaintiffs' suggestion, there is no separate "illegality" exception to the rule of *Foss* v. *Harbottle*. (*See* Moore Supplemental Decl. ¶¶ 61-75.) Once again, Plaintiffs ignore both the prior writings of their own expert and the overwhelming weight of U.S. and U.K. authority. In his textbook, Mr. Adair identifies four narrow exceptions to *Foss* v. *Harbottle*'s general prohibition of derivative suits, none of which is an "illegal acts" exception:

The strict application of the rule in *Foss v Harbottle* would preclude a member from bringing any proceedings on behalf of a company.  However, there are exceptions to the rule, which were set out by the Court of Appeal in *Edwards v Halliwell* in the following terms:

(1) where the alleged wrong is ultra vires the company;

(2) where the transaction complained of could be validly done or sanctioned only by a special resolution and could not, therefore, be sanctioned by a simple majority;

(3) where personal rights are infringed; and[2]

(4) where what is complained of amounts to fraud and those responsible for the fraud are in control of the company.

Steinfeld et al., at 104.[3]

Notwithstanding their own expert's textbook, Plaintiffs point to three cases—from the nearly 170-year history of the rule of *Foss* v. *Harbottle*—that supposedly support a separate "illegal acts" exception.  (*See* Supplemental Br. at 15.)  Two of those cases at best suggest *in dicta* that illegal acts could be relevant to a standing determination, while the third's *ipse dixit* pronouncement on the subject runs counter to subsequent case law.

For example, Plaintiffs cite the 1897 decision in *Powell* v. *Kempton Park Racecourse*, [1897] 2 QB 242, 268.  (Supplemental Br. at 15.)  Plaintiffs fail to mention, however, that "the question of standing was conceded" in that case or that the case was not even a derivative action, but rather a personal action to enjoin a company's future illegal act.  (*See* Moore Supplemental Decl. ¶ 67(a).)  In rejecting the existence of a separate exception to *Foss* v. *Harbottle* for illegal

---

[2] Many authorities omit this "personal rights exception" because a plaintiff whose personal rights have been infringed need not proceed derivatively on behalf of the corporation.

[3] Plaintiffs criticize Mr. Moore's reliance on the Law Commission's Consultation Paper Shareholder Remedies (Supplemental Br. at 19), even though the Law Commission cites the same English decision—*Edwards* v. *Halliwell* [1950] 2 All ER 1064—that Mr. Adair cites in his textbook. (*See* Moore Supplemental Decl. ¶ 45.)  As Mr. Moore observes, the Law Commission also "did not recognise any general exception for illegal acts."  (*Id.* ¶ 66.)

acts, the D.C. Circuit expressly distinguished *Powell* on this ground.  *See City of Harper Woods*, 589 F.3d at 1302 ("The case concerned whether the alleged activity was in fact illegal, and the defendants did not argue that the court lacked jurisdiction to enjoin the defendants from committing a criminal act.").

Similarly, Plaintiffs' reliance on dicta from an Australian decision, *Australian Agricultural Co.* v. *Oatmont Pty*, [1992] 8 ACSR, is misplaced.  (*See* Supplemental Br. at 16.) In that case, the Australian court speculated that causing a company to act illegally "could well give rise" to a derivative action.  255 ¶¶ 36-37.  As Mr. Moore explains, "[i]t is not suggested that such an action could necessarily be pursued in the absence of one or more of the established exceptions to the rule in *Foss* v. *Harbottle*."  (Moore Supplemental Decl. ¶ 67(c).)  In *City of Harper Woods*, the D.C. Circuit stated that "Mr. Moore aptly disposes of the Australian case," citing a declaration that Mr. Moore filed in that case.  589 F.3d at 1303.

Finally, the 1915 Irish case of *Cockburn* v. *Newbridge Sanitary Steam Laundry Company Ltd.*, [1915] 1 IR 237, proceeds on the unsupported assumption that the commission of certain illegal acts—"so tainted with crime and so subversive of public policy"—"could not be in any way within the powers of a company."  [1915] 1 IR 237, 254.  As Mr. Moore explains, however, "[t]hat may have been true as a matter of Irish law in 1915, but as a matter of English law the established position is entirely the reverse."  (Moore Supplemental Decl. ¶ 67(b).)

Not surprisingly, no U.S. court has recognized a separate "illegal acts" exception to the rule of *Foss* v. *Harbottle*.  (*See* Defs. Reply Br. at 12-13.)  At least two courts, including the D.C. Circuit, have expressly rejected the existence of such an exception.  *See City of Harper Woods*, 589 F.3d at 1302 ("Harper Woods has cited no case in which an English court has authoritatively held that a criminally illegal, but not *ultra vires*, act is outside the rule of *Foss* v. *Harbottle* and

therefore a shareholder derivative suit may proceed."); *Winn* v. *Schafer*, 499 F. Supp. 2d 390,

397 (S.D.N.Y. 2007) ("Even in cases involving alleged illegalities that cannot be ratified by a

shareholder vote, a plaintiff still must demonstrate that he meets the specific requirements of one

of the well-established *Foss* exceptions in order to have standing to bring suit.").[4]

Finally, Plaintiffs fail to allege any illegal acts by Defendants.  They instead allege that

Defendants breached their fiduciary duties to BP by failing to provide "effective oversight of the

company's safety culture and major accident prevention programs."  (Compl. ¶ 134.)  Indeed,

Plaintiffs have repeatedly emphasized that the "conduct" at issue here is allegedly insufficient

oversight and excessive cost-cutting.  (*See* Pls. Opp'n at 2 ("If ever a shareholder derivative suit

based on a board's disregard for their corporate monitoring responsibility warrants a trial, this is

it."); Supplemental Br. at 9 ("These defendants were repeatedly warned that the Board's and

senior management's cost-cutting procedures and failure to properly oversee process safety

could and was likely to lead to disaster.").)  Neither Plaintiffs nor their expert points to any cases

holding that such alleged breaches of fiduciary duty fall within an exception to the rule of *Foss* v.

*Harbottle*.

## III.    ALTERNATIVELY, PLAINTIFFS' NEW ARGUMENTS FURTHER SUPPORT DISMISSAL UNDER THE *FORUM NON CONVENIENS* DOCTRINE.

Plaintiffs' new arguments under English law only highlight why *forum non* dismissal is

appropriate here.  For instance, Plaintiffs' assertion that this Court should determine after

---

[4] In their Supplemental Brief, Plaintiffs ignore all but one of the many U.S. decisions holding that the rule of *Foss* v. *Harbotle* bars derivative claims.  With respect to one case they do address—*City of Harper Woods*—Plaintiffs simply disagree with the D.C. Circuit's analysis, noting that "the court depended for its analysis on declarations by Mr. Moore."  (Supplemental Br. at 21.)  Although Plaintiffs attempt to distinguish *City of Harper Woods* on the ground that the conduct alleged there (the payment of $2 billion in bribes and kickbacks to Prince Bandar Bin Sultan of Saudi Arabia) had a "tenuous link to the United States" (*id.* at 20-21), that distinction has nothing to do with whether there is a separate "illegal acts" exception to the English common-law rule.

considering the factors set forth in Section 263 of the Companies Act whether to grant Plaintiffs

permission to pursue their derivative claims would require this Court to analyze numerous issues

under English law.  Mr. Moore explains:

> It is not surprising that "the Court" is specified to mean the English
> Court.  The exercise set out in ss.261 and s.263 are inherently
> English matters.  They involve an evaluation not only of the merits
> of any substantive claim, but also of the wider internal affairs and
> interests of an English company.  The substantive claim for breach
> of fiduciary duty is governed by English law, and under
> s.263(3)(b) the Court is required to have regard to the English law
> duty under s.172.
>
> The latter test involves, unusually, the Court putting itself in the
> shoes of a director of the company, and in essence exercising a
> business judgment.  It would be surprising if the legislature had
> intended that such a judgment should be made on behalf of an
> English company by a foreign court.

(Moore Decl. ¶¶ 32-33.)  Similarly, Plaintiffs' argument under *Foss* v. *Harbottle* asks the Court

to expound on English common-law based on decades-old decisions from Australia and Ireland.

In these circumstances, courts have routinely recognized that dismissal on *forum non*

*conveniens* grounds is appropriate:

> It is clear . . . that [foreign] law will apply to many, if not most, of
> the claims at issue in this case, and that United States law is
> unlikely to apply at all.  In such a case, the "Supreme Court has
> suggested firmly that, unless there is some idiosyncrasy in the facts
> of a case to be resolved under foreign law, it should ordinarily be
> dismissed in favor a foreign tribunal."

*In re Banco Santander Sec.-Optimal Litig.*, 732 F. Supp. 2d 1305, 1339 (S.D. Fla. 2010)

(quoting *Sigalas* v. *Lido Maritime, Inc.*, 776 F.2d 1512, 1520 (11th Cir. 1985)); *see also*

*Gulf Oil Corp.* v. *Gilbert*, 330 U.S. 501, 509 (1947) (emphasizing importance of

litigating "a diversity case in a forum that is at home with the [foreign] law that must

govern the case, rather than having a court in some other forum untangle problems in

conflict of laws, and in law foreign to itself."); *Saqui* v. *Pride Cent. Am., LLC*, 595 F.3d

206, 214 (5th Cir. 2010) (courts should "avoid[] . . . unnecessary problems in conflict of

law, or in the application of foreign laws," in determining proper forum for litigation).

"Here, the substantial disagreements between the parties' respective experts on several

basic legal matters . . . have given the Court a preview of even thornier problems to come

if the Court must apply foreign law in trying the merits of th[e] case."  *In re Banco*

*Santander*, 732 F. Supp. 2d at 1339.

## IV.   PLAINTIFFS ARE NOT ENTITLED TO JURISDICTIONAL DISCOVERY.

Even though this Court's August 10 Order authorized additional briefing on only three

enumerated topics relating to standing to bring a derivative action under English law, Plaintiffs'

supplemental brief renews their request for jurisdictional discovery.  (Supplemental Br. at 22-

24.)  Assuming this Court reaches the issue of personal jurisdiction,[5] Plaintiffs are not entitled to

jurisdictional discovery for at least two reasons.

First, the Complaint fails to plead a *prima facie* case of personal jurisdiction over any of

the individual defendants.  (*See* Defs. Mem. in Supp. of  Mot. to Dismiss at 31-34; Defs. Reply

Br. at 18-20.)  Because Plaintiffs have failed to allege that any individual defendant has

sufficient—and, in most cases, *any*—contacts with Louisiana, Plaintiffs are not now entitled to

---

[5] This Court need not reach the question of personal jurisdiction if it concludes that Plaintiffs lack standing.  *See*, *e.g.*, *City of Harper Woods Emps.' Ret. Sys.* v. *Olver*, 577 F. Supp. 2d 124, 137 (D.D.C. 2008) ("Because the Complaint will be dismissed for lack of standing, the Court does not reach the merits of Defendants' arguments on *forum non conveniens* and personal jurisdiction."), *aff'd* 589 F.3d 1292; *Batchelder* v. *Kawamoto*, 147 F.3d 915, 922 & n.3 (9th Cir. 1998) (holding that it "need not reach the *forum non conveniens* issue or the claim that the district court erred in dismissing the action on grounds of Japan's exclusive jurisdiction and international comity" after affirming dismissal of complaint for lack of standing); *In re BP plc Deriv. Litig.*, 507 F. Supp. 2d at 303, 306-07 (granting motion to dismiss "in its entirety" based on lack of standing without reaching alternative *forum non conveniens* and personal jurisdiction arguments); *CMIA Partners Equity Ltd.* v. *O'Neill*, 920 N.Y.S.2d 240 (Table), at *8 (N.Y. Sup. Ct. 2010) ("[S]ince defendants' motions to dismiss on the basis of lack of standing are granted, the court need not reach the merits of the defendants' other arguments in favor of dismissal"); *Feiner Family Trust* v. *VBI Corp.*, 2007 WL 2615448, at *1 & n.1 (S.D.N.Y. Sept. 11, 2007) (declining to reach alternative arguments, such as lack of personal jurisdiction, because plaintiffs lacked standing to sue derivatively).

conduct a fishing expedition.  As a district court in Louisiana recently explained, "[c]ourts will not allow a plaintiff who fails to establish *prima facie* personal jurisdiction to conduct a fishing expedition in order to make a case."  *Bonvillain*, 702 F. Supp. 2d at 686.

Second, Plaintiffs seek discovery under a legally unsupportable theory of personal jurisdiction.  (*See* Defs. Reply Br. at 19-20.)  Plaintiffs assert that "[d]irectors who breach their fiduciary duties cause effects in those places where the corporation has major business operations, and are therefore subject to specific personal jurisdiction there."  (Supplemental Br. at 22.)  The two cases cited by Plaintiffs, however, do not support this broad proposition.  In both cases, the company on whose behalf suit was brought was *headquartered* in the forum.

In *Mehlenbacher ex rel. Asconii Corp.* v. *Jitaru*, 2005 WL 4585859 (M.D. Fla. 2005), a Florida court held that personal jurisdiction over the director defendant existed because he was "accused of intentional wrongdoing directed to a corporation *headquartered in Florida*, which injured that company *in Florida.*"  *Id.* at *14 (emphasis added).  The court emphasized that defendant was "a corporate director and audit committee member of a *Florida-based* company."  *Id.* ("it was [the defendant]'s choice to accept leadership positions in a corporation *headquartered* in [Florida]") (emphasis added).

Similarly, in *In re InfoSonics Corp. Derivative Litigation*, No. 06cv1336, 2007 WL 2572276 (S.D. Cal. Sept. 4, 2007), a California court held that it had specific jurisdiction over individual defendants whose alleged wrongful acts "were expressly aimed at California and caused harm in California" because the company's headquarters and principal place of business were in California.  *Id.* at *4.  Unlike here, defendants in *InfoSonics* "held positions of power in a corporation headquartered in California and attended Board and Committee meetings [t]here."  *Id.* at *6.  The court also held that "California has an interest in adjudicating the dispute because

InfoSonics, a California citizen, was allegedly harmed" and because "[a] majority of the defendants are California citizens." *Id.* at *5. The individual defendants here are directors of an English corporation headquartered in London, and none of them are citizens of Louisiana.[6]

Plaintiffs' theory of personal jurisdiction is contrary to the requirements of due process that an individual have "minimum contacts" with the forum. If accepted by this Court, Plaintiffs' theory would subject directors and officers of multinational companies to jurisdiction in any forum in which the company operates. Other courts have expressly rejected this theory. *See*, *e.g.*, *Ruggiero* v. *FuturaGene, plc*, 948 A.2d 1124, 1134 (Del. Ch. 2008) ("[A] corporate director or officer of a foreign corporation cannot be haled into a Delaware court for an act of the corporation simply because the officer or director has directed the corporation to take that act.").

## CONCLUSION

For the foregoing reasons, as well as those set forth in Defendants' prior briefs, the Complaint should be dismissed in its entirety.

Dated:  September 9, 2011                    Respectfully submitted,


OF COUNSEL:                                   *s/Thomas W. Taylor*
                                             Thomas W. Taylor (S.D. No. 3906)
                                             Texas State Bar No. 19723875
Daryl A. Libow (pro hac vice)                ANDREWS KURTH LLP
Bruce W. Hickey                              600 Travis, Suite 4200
SULLIVAN & CROMWELL LLP                       Houston, Texas 77002
1701 Pennsylvania Avenue, N.W.                Telephone: (713) 220-4200
Washington, D.C. 20006                        Facsimile:   (713) 220-4285
Telephone: (202) 956-7500                     ttaylor@andrewskurth.com
libowd@sullcrom.com

---

[6] Plaintiffs also quote *Guidry* v. *U.S. Tobacco Co.*, 188 F.3d 619, 628 (5th Cir. 1999), for the proposition that "[e]ven an act done outside the state that has consequences or effects within the state will suffice as a basis for jurisdiction in a suit arising from those consequences if the effects are seriously harmful and were intended or highly likely to follow from the nonresident defendants' conduct." (Supplemental Br. at 22-23.)  *Guidry* is inapposite because the issue there was whether four tobacco industry *trade associations* were subject to personal jurisdiction in Louisiana, not whether any *officers or directors* of the associations were so subject. *Id.* at 624.

hickeyb@sullcrom.com

Richard C. Pepperman, II (pro hac vice)
Marc De Leeuw (pro hac vice)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
peppermanr@sullcrom.com
deleeuwm@sullcrom.com

*Attorney-in-charge for Nominal Defendant
BP p.l.c. and Defendants Iain C. Conn, Robert
W. Dudley, Byron E. Grote, Anthony B.
Hayward, Andy G. Inglis, Antony Burgmans,
Cynthia B. Carroll, William M. Castell,
George David, Erroll B. Davis, Jr., Douglas J.
Flint, DeAnne S. Julius, Ian M.G. Prosser,
Peter Sutherland, Carl-Henric Svanberg, H.
Lamar McKay, and Robert A. Malone*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the above and foregoing document has been served by electronic CM/ECF filing, on this 9th day of September, 2011.


*s/Thomas W. Taylor*
Thomas W. Taylor