UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE BP SHAREHOLDER<br>DERIVATIVE LITIGATION | §<br>§<br>§<br>§<br>§<br>§ | MDL NO.: 10-md-2185<br><br>CIVIL ACTION NO.: 4:10-cv-3447 |

**MEMORANDUM AND ORDER**

Pending before the Court is Derivative Plaintiffs' Opposed Motion, Pursuant to Federal Rule of Civil Procedure 59, to Alter or Amend the Court's Order Dated September 15, 2011 (Doc. No. 133).[1] Having considered the parties' arguments and the applicable law, the Court finds that Plaintiffs' motion should be denied.

### I. BACKGROUND

This is a shareholder derivative action brought on behalf of nominal defendant BP to recover damages and other relief from various current and former officers and directors of BP and BP's U.S. subsidiary for alleged breaches of their fiduciary duties. In their complaint, Plaintiffs alleged that the individual defendants engaged in a pattern of disregard for the safety of BP's energy exploration operations. According to Plaintiffs, this led to a series of safety violations spanning over two decades and culminated in the Deepwater Horizon explosion and subsequent oil spill in the Gulf of Mexico.[2] (Complaint, Doc. No. 81, at ¶ 247-272).

On September 15, 2011, this Court issued an order dismissing this case on forum non conveniens grounds, concluding that the English High Court is a far more appropriate forum for this litigation (Order of Dismissal, Doc. No. 131). This Court conditioned the dismissal on either

---

[1] All docket references are to Civil Action No. 4:10-cv-3447.
[2] A more detailed summary of the facts can be found in this Court's September 15 Order of Dismissal (Doc. No. 131).

1

Defendants proffer of adequate proof that they are, in fact, amenable to process in England or submission of a stipulation that they will submit to the jurisdiction of the appropriate English court. This Court also noted its authority to reassert jurisdiction should the courts of England refuse to accept jurisdiction for reasons other than Plaintiffs' refusal to pursue an action or to comply with the procedural requirements of English courts. This Court also retained jurisdiction to supervise the terms of the dismissal.

On October 3, 2011, Defendants filed a Stipulation (Doc. No. 132), agreeing to:

submit to the jurisdiction of the appropriate English court in any derivative action brought by a shareholder of BP p.l.c. in that court based upon the facts and claims alleged in the Verified Consolidated Amended Shareholder Derivative Complaint in this action.

On October 12, 2011, Derivative Plaintiffs filed the motion at issue here (Plaintiffs' Opposed Motion to Alter or Amend, Doc. No. 133), urging this Court to alter or amend its Order of Dismissal. Plaintiffs contend that Defendants' stipulation does not comply with the directive in the Order of Dismissal. (*Id.*, at 3). Specifically, Plaintiffs suggest that a literal reading of Defendants' stipulation would limit their ability to allege additional facts that have come to light since the filing of their complaint in the United States. Second, Plaintiffs outline five additional conditions they would have this Court add to the terms of dismissal. These conditions would require Defendants to do the following:

(1) Waive any limitations or laches-related defenses that arose while the derivative litigation was pending in the United States;

(2) Not object to the admissibility of discovery taken in the United States;

(3) Agree that all discovery that occurs in the United States shall be conducted in accordance with the Federal Rules of Civil Procedure;

  (4) Agree that U.S.-based employees of BP p.l.c. and its subsidiaries who are not named as defendants will submit to jurisdiction in the United Kingdom for discovery purposes without a subpoena or other judicial process; and

  (5) Satisfy in the United States any judgment that the English courts may render.

(*Id.*, at 4–5). In addition to these conditions, Plaintiffs also urge this Court to stay its order of dismissal for sixty days so that Plaintiffs have an opportunity to investigate and assess the risks and benefits of pursuing their cause of action in England.

  Defendants filed their opposition (Defendants' Response in Opposition, Doc. No. 134) on October 31, 2011. According to Defendants, Plaintiffs' motion to amend is procedurally improper because Rule 59 requires a showing of a manifest error or law or fact and cannot be used merely to impose additional conditions on dismissal. (*Id.*, at 2). Defendants also challenge the basis for each of Plaintiffs' proposed conditions. Finally, Defendants argue that the language of their stipulation satisfies this Court's Order of Dismissal.

  On November 10, 2011, Plaintiffs filed their reply (Reply in Support of Opposed Motion, Doc. No. 135). Plaintiffs contend that their Rule 59(e) motion is procedurally proper because Rule 59(e) is intended to cover a broad range of motions. (*Id.*, at 2). Plaintiffs again urge this Court to grant their proposed conditions, despite Plaintiffs' failure to seek the conditions in prior briefings.

## II. LEGAL STANDARD

### A. Rule 59(e) motions

  Rule 59(e) provides that a motion to alter or amend a judgment must be filed no later than twenty-eight days following the entry of judgment. FED. R. CIV. P. 59(e). Depending on the timing of the motion, the Fifth Circuit treats a motion for reconsideration as either a motion to

alter or amend under Rule 59(e) or a motion for relief from judgment under Rule 60(b). *United States v. Turner*, No. CA 11-928, 2011 WL 2836752, at *1 (E.D. La. July 15, 2011) (citing *Lavespere v. Niagara Mach. & Tools Works, Inc.*, 910 F.2d 167, 173 (5th Cir. 1990)). If the motion is filed within twenty-eight days of the judgment, then the motion constitutes a motion to alter or amend under Rule 59(e). *Id.*; FED. R. CIV. P. 59(e). A motion filed more than twenty-eight days after the judgment, but not more than one year after the entry of judgment, is governed by Rule 60(b). FED. R. CIV. P. 60(b).

A district court has considerable discretion to grant or deny a motion under Rule 59(e). *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 355 (5th Cir. 1993). A court's reconsideration of an earlier order is an extraordinary remedy and should be granted sparingly. *Fields v. Pool Offshore, Inc.*, No. 97-3170, 1998 WL 43217, at *2 (E.D. La. Feb. 3, 1998), *aff'd*, 182 F.3d 353 (5th Cir. 1999); *see also Rottmund v. Cont'l Assur. Co.*, 813 F. Supp. 1104, 1107 (E.D. Pa. 1992) (although federal district courts have inherent power over interlocutory orders and may modify, vacate, or set aside these orders when the interests of justice require, "[b]ecause of the interest in finality . . . courts should grant motions for reconsideration sparingly").

To succeed on a Rule 59(e) motion, a party must clearly establish at least one of the following factors: (1) an intervening change in the controlling law, (2) the availability of new evidence, or (3) a manifest error of law or fact. *Fields*, 1998 WL 43217, at *2; *see also Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 567 (5th Cir. 2003); *Ross v. Marshall*, 426 F.3d 745, 763 (5th Cir. 2005); *In re Benjamin Moore & Co.*, 318 F.3d 626, 629 (5th Cir. 2002). As the Fifth Circuit has explained, "Rule 59(e) does not set forth any specific grounds for relief." *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 174 (5th Cir. 1990), *abrogated on other grounds, Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994). Although a district

4

court has "considerable discretion in deciding whether to reopen a case" under Rule 59(e), "[t]hat discretion, of course, is not limitless." *Id.* at 174. However, the Fifth Circuit has emphasized that a Rule 59(e) motion "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised before the entry of judgment." *Templet v. HydroChem Inc.*, 367 F.3d 473, 478–9 (5th Cir. 2004).

## B. Imposition of conditions on forum non conveniens dismissals

When considering what conditions should be imposed on an order of dismissal on forum non conveniens grounds, a district court must take care to "ensure that a plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice and that if the defendant obstructs such reinstatement in the alternative forum that the plaintiff may return to the American forum." *In re Air Crash Disaster Near New Orleans, La.*, 821 F.2d 1147, 1166 (5th Cir. 1987), *vacated on other grounds*, *Pan American World Airways, Inc. v. Lopez*, 490 U.S. 1032 (1989). The *Air Crash* directive is the touchstone consideration in forum non conveniens dismissals in the Fifth Circuit.

Expanding on this guiding principle, the Fifth Circuit has detailed more specific measures that a district court should consider in the forum non conveniens dismissal context. In order to comply with the *Air Crash* directive, "courts must take measures, as part of their dismissals in forum non conveniens cases, to ensure that defendants will not attempt to evade the jurisdiction of the foreign courts." *Baris v. Sulpicio Lines, Inc.*, 932 F.2d 1540, 1551 (5th Cir. 1991). Specific measures a court should consider include agreements between the parties to: (1) litigate in another forum, (2) submit to service of process in that jurisdiction, (3) waive assertion of any limitations defenses, (4) agree to discovery, and (5) agree to the enforceability of the foreign judgment. *Id.* Determining the appropriate conditions of dismissal—or imposing no conditions

5

at all—is a matter left to the district court's discretion. *Id.* At a minimum, "*Air Crash* requires the courts to ensure that plaintiffs can reinstate suits in American courts if the defendants obstruct jurisdiction in the alternative forum." *Id.*

### III. ANALYSIS

### A. **Derivative Plaintiffs fail to establish any of the Rule 59(e) factors that would support amendment or alteration of the Order of Dismissal**

The Derivative Plaintiffs filed the motion at issue within twenty-eight days of this Court's September 15 Order of Dismissal. Accordingly, Plaintiffs' motion is properly construed as a motion to alter or amend under Rule 59(e). The law is clear: in order to prevail on a motion under Rule 59(e), the movant must clearly establish an intervening change in the law, the availability of new evidence, or a manifest error of law or fact. *Turner*, 2011 WL 2836752, at *1 (citing *Schiller v. Physicians Res. Grp. Inc.,* 342 F.3d 563, 567 (5th Cir.2003)). Plaintiffs have not clearly established any of the bases that would support amendment or alteration under Rule 59(e).

Plaintiffs point to no intervening change in the law. While Plaintiffs posit that Defendants' stipulation will impede their efforts to include "new claims based upon statutory developments or judicial interpretation of the existing law," they do not cite any specific statutory developments or judicial decisions to ground their hypothetical concern. The Court thus has no evidence before it that new English laws could affect Plaintiffs' success in litigating their claim in England.

Plaintiffs do not directly address the other two bases for altering or amending an order either. In fact, Plaintiffs make only two statements in their motion that could be construed as proposed justifications for alteration or amendment under Rule 59(e). Plaintiffs first state the following:

6

> In the event that after obtaining all appropriate information counsel recommends such action [to pursue the claim in England] to Derivative Plaintiffs, many of the Derivative Plaintiffs will need to request their respective boards of trustees' approval before authorizing this new course. *In that regard*, Derivative Plaintiffs request that the Court amend the Order to include additional conditions…

(Doc. No. 133, at 2) (emphasis added).  Plaintiffs later state:

> Derivative Plaintiffs respectfully request that this Court impose certain other conditions to the dismissal order *to make certain that the claimed benefits of granting the forum non conveniens motion are, in fact, realized.*

(*Id.*, at 4) (emphasis added).  Plaintiffs' first statement suggests that internal corporate approvals may be required for Plaintiffs to initiate suit abroad and that such approvals may be contingent upon assurances the additional conditions would provide.  However, Plaintiffs have not provided actual evidence, nor have they explicitly alleged, any such internal corporate requirements.  Similarly, Derivative Plaintiffs' second statement is too nebulous to support any finding of a manifest error of law or fact.  Plaintiffs have not explained how additional conditions could make the benefits of bringing the action in England more certain because they have not pinpointed any uncertainty they currently face.  Finally, Plaintiffs urge this Court to impose additional conditions because "[t]hese conditions have been included by other courts" and "Derivative Plaintiffs believe these conditions are necessary to ensure that this case can be heard abroad." (*Id.*, at 2).  This nonspecific rationale is insufficient to justify amending or altering the Order of Dismissal under Rule 59(e).

### B.  **Defendants' stipulation complies with this Court's Order of Dismissal**

In its September 15 Order, this Court conditioned dismissal on either Defendants' proffer of adequate proof that they are amenable to process in England or Defendants' filing of a stipulation to submit to jurisdiction in the appropriate English court.  (Doc. No. 131, at 31).  Defendants selected the latter option and filed a stipulation on October 3, 2011, agreeing to:

7

>submit to the jurisdiction of the appropriate English court in any derivative action brought by a shareholder of BP p.l.c. in that court based upon the facts and claims alleged in the Verified Consolidated Amended Shareholder Derivative Complaint in this action.

(Doc. No. 132). Plaintiffs take issue with the language of the stipulation. Specifically, Plaintiffs fear that Defendants' stipulation precludes them from "includ[ing] recent developments and other incriminating facts in any U.K. pleading and to add claims supported by the governing English law." (Doc. No. 133, at 3).

Plaintiffs fears appear unfounded. First, Plaintiffs present no evidence—and, indeed, make no specific allegation—that Defendants have acted with any malevolence in phrasing their stipulation. Second, Defendants themselves have clarified the meaning of their stipulation, volunteering that "[n]ewly discovered facts and different English claims could be alleged in a derivative action covered by the individual defendants' stipulation so long as those facts and claims are related to those in the current complaint and thus the English action is 'based upon' the same facts and claims." (Doc. No. 134, at 2). Thus, by Defendants' own admission, Plaintiffs' concern appears unwarranted. Defendants' current stipulation complies with the Order of Dismissal and adequately addresses the Court's—and the Plaintiffs'—jurisdictional concerns.

### C. There is no basis to support the additional conditions Plaintiffs request

To support their argument for the imposition of additional conditions, Plaintiffs cite a slew of factually dissimilar cases in which district courts imposed some combination of the conditions Plaintiffs now request.[3] While Plaintiffs have made it clear that they want additional

---

[3] Plaintiffs appear to have selected their citations regardless of relevance to the case at hand. The cases either do not provide any rationale for the imposition of the various conditions or present factual scenarios inapposite to the one here. *See, e.g., Lopez Dominguez v. Gulf Coast Marine & Assoc.*, 607 F.3d 1066 (5th Cir. 2010) (noting that conditions were imposed but discussing, principally, the presiding judge's conflict due to his percentage of share ownership); *In re Factor VIII Or IX Concentrate Blood Products Liability Litig.*, 408 F. Supp. 2d 569 (N.D. Ill. 2006) (imposing the requested conditions because both parties were agreeable to them); *Koke v. Phillips Petrol. Co.*, 730 F.2d 211, 214 (5th Cir. 1984) (basing the forum non conveniens analysis on a different framework governing maritime law cases). The cases Plaintiffs cite also do not address any concerns that may be specific to the securities context or England as an alternate forum.

8

conditions, they have not demonstrated that they need them. Instead, Plaintiffs construe the Fifth Circuit's jurisprudence on this issue as a "presumption" in favor of plaintiffs in forum non conveniens cases. According to Plaintiffs, "in this Circuit the party obtaining dismissal 'must' be subject to conditions the court deems proper." (Doc. No. 135, at 6).

In *Baris*, the Fifth Circuit listed specific measures a court should consider in forum non conveniens dismissals, including agreements between the parties to: (1) litigate in another forum, (2) submit to service of process in that jurisdiction, (3) waive assertion of any limitations defenses, (4) agree to discovery, and (5) agree to the enforceability of the foreign judgment. *Baris*, 932 F.2d at 1551. While these conditions are factors a district court must consider when dismissing a case on foreign non conveniens grounds, there is no requirement in this circuit that a district court impose every condition suggested in *Baris*. In fact, the only *required* condition in a forum non conveniens dismissal is a return jurisdiction clause; the other *Baris* conditions are suggestions which *may* be included where appropriate. *Robinson v. TCI/US West Communications, Inc.*, 117 F.3d 900, 908 (5th Cir. 1997) (noting that "neither *Air Crash* nor *Baris* provides step-by-step guidance as to what combination of these measures must be implemented" but noting that *Baris* "unmistakenly indicates that the failure to include a return jurisdiction clause is a fatal error").

Thus, a district court has the ability to exercise its discretion in deciding which conditions fit the unique context of the specific case before it. *See, e.g., O'Keefe v. Noble Drilling Corp.*, No. 08-41305, 2009 WL 2957320, at *4 (5th Cir. Sep. 15, 2009) (finding that the district court satisfied the *Baris* requirement to ensure the defendants could not evade jurisdiction, even where the district court had imposed only one condition on dismissal, namely that all defendants submit to the jurisdiction of the Brazilian court); *see also Carijano v. Occidental Petroleum Corp.*, 643

9

F.3d 1216, 1234 (9th Cir. 2011) (quoting *Leetsch v. Freedman*, 260 F.3d 1100, 1104 (9th Cir. 2001)) ("District courts are not required to impose conditions on *forum non conveniens* dismissals" and failure to do so is only an abuse of discretion where "'there is a justifiable reason to doubt that a party will cooperate with the foreign forum.'").

It is not appropriate to add additional conditions on the dismissal at this time. First, this Court already considered the Plaintiffs' concerns, decided that dismissal was appropriate, and imposed conditions that adequately protect Plaintiffs' ability to return to an American courtroom should they encounter problems in England. Second, even examining the substance of Plaintiffs' proposed conditions, the conditions are not warranted.

### 1. *The Order of Dismissal already considered Plaintiffs' concerns*

In its Order of Dismissal, this Court conditioned dismissal on either Defendants' proffer of adequate proof that they are amenable to process in England or Defendants' filing of a stipulation to submit to jurisdiction in the appropriate English court. (Doc. No. 131, at 31). In addition, this Court noted that it could "reassert jurisdiction upon timely notification if the courts of England refuse to accept jurisdiction" and retained jurisdiction to supervise the terms of the dismissal. (*Id.*). Prior to filing the instant motion, Plaintiffs never asked this Court, either in their briefs or during oral argument, to impose any of the additional conditions they now request.

The Fifth Circuit has made clear that Rule 59(e) motions "cannot be used to raise arguments that could, and should, have been made before the judgment issued." *Simon v. United States*, 891 F.3d 1154, 1159 (5th Cir. 1990). A Rule 59(e) motion "is not the proper vehicle for rehashing evidence, legal theories, or arguments that could have been offered or raised." *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir. 2004). Although Plaintiffs never explicitly raised their request previously, Plaintiffs now claim that their prior briefings "did, in

10

fact, touch upon a number of concerns pertinent to the conditions they seek now." (Doc. No. 135, at 3). Specifically, Plaintiffs point to portions of their brief arguing against dismissal that highlighted concerns over access to non-party witnesses, use in the United Kingdom of discovery generated in U.S. proceedings, and their ability to satisfy a judgment from the United Kingdom in the United States. (Plaintiff's Memorandum in Opposition to Motion to Dismiss, Doc. No. 108, at 26–7).

Plaintiffs' argument works against them. As Plaintiffs already raised—or at least "touched on"—these concerns previously, this Court already considered the concerns and found dismissal appropriate despite the concerns. A "Rule 59(e) motion is not proper to re-litigate matters that have been resolved to the movant's dissatisfaction and Plaintiff cannot have a 'second bite at the apple' on the same issues that were previously addressed by the parties and this Court." *Alvarado v. The Texas Rangers,* No. EP-03-CA-0305-FM, 2005 WL 1420846, at *2 (W.D. Tex. June 14, 2005). In this case, the conditions Plaintiffs now request reflect concerns that, by Plaintiffs own admission, were raised in their opposition to Defendants' motion to dismiss. This Court will not now reconsider evidence and concerns that it explicitly considered in its Order of Dismissal.

### 2. *Imposing conditions on discovery would frustrate the English courts' interest in overseeing litigation in the United Kingdom*

Even turning to the substance of Plaintiffs' requested conditions, the conditions are not warranted. If granted, the majority of the conditions would severely restrict discovery in the English courts. Specifically, Plaintiffs would have this court (1) require that Defendants not object to the admissibility of discovery taken in the United States, (2) agree that the Federal Rules of Civil Procedure govern all discovery that occurs in the United States, and (3) agree that

11

all of BP's U.S.-based employees will submit to jurisdiction in the United Kingdom for discovery purposes, without any further judicial process.

As explained in the *Vioxx* multi-district litigation, "[t]he mere fact that a foreign judicial system abides by certain rules and procedures that differ from those of the United States cannot justify imposing conditions on dismissal that might undermine the foreign forum's policy judgments by substantially altering its rules or procedures to mirror our own." *In re Vioxx Prod. Liab. Litig.*, MDL No. 1657, 2009 WL 1636244, at *12 (E.D. La. Feb. 10, 2009).  In *Vioxx*, U.K.-based plaintiffs requested several additional conditions on an order of dismissal, including requirements that defendants agree to a trial by jury, use the Federal Rules in discovery, produce documents previously produced in the United States, and allow testimony to be introduced through various mechanisms common in the United States.  *Id.* at *12.  The court held these discovery-related conditions "institutional conditions" that would fundamentally "alter the nature of the proceedings in the foreign jurisdictions."  *Id.; see also Adams v. Merck & Co., Inc.*, No. 09-30260, 353 Fed. Appx. 960, 964 (5th Cir. Nov. 30, 2009) (affirming the district court's refusal to impose additional conditions in *In re Vioxx* and agreeing that the conditions were "'institutional' conditions that go to the heart of policy differences between the United States and the foreign fora when it comes to the appropriate mechanism for resolving civil disputes").

If this Court were to impose the conditions at issue here, "it would not be imposing conditions on [the defendants] so much as it would be imposing conditions on the foreign court." 2009 WL 1636244, at *12; *see also Gross v. British Broad. Corp.*, 386 F.3d 224, 235 (2d Cir. 2004) ("There is a point at which conditions cease to be a limitation on the defendant and become instead an unwarranted intrusion on the transferee forum's policies governing its judicial system.").  Here, "[t]he plaintiffs in this case seek to circumvent rules and procedures adopted by

12

the U.K. that reflect considered policy judgments about . . . the desirable scope of discovery." *In re Vioxx*, 2009 WL 1636244, at *12.

The *Vioxx* and *Merck* decisions reflect the deference due to England's interest in overseeing litigation in its courts. The United Kingdom recently underscored this interest, explaining that "the U.K.'s approach to securities . . . litigation differs in important respects from that of the U.S., and those differences represent legitimate policy choices and sovereign interests that ought to be respected by the United States." Brief of the United Kingdom of Great Britain and Northern Ireland as Amicus Curiae in Support of Respondents, *Morrison v. Nat'l Australia Bank Ltd.*, 130 S.Ct. 2869 (2010) (No. 09-1191), 2010 WL 723009. With respect to discovery specifically, the U.K. has voiced concern over the "panoply of procedural rules and remedies that accompany litigation in federal courts under U.S. securities laws" and noted the "procedural ramifications that are potentially inconsistent or in conflict with the policy choices made in . . . the U.K." *Id.* Procedural rules that potentially generate inconsistencies include: the scope of discovery, the availability of multi-party litigation, fee arrangements, attorney fee awards, and the expected time to bring a case to trial. *Id.* England has a "fundamental interest" in these policy determinations and in deciding "how and when class action shareholder litigation should occur." *Id.* The discovery-related conditions Plaintiffs request here would alter England's procedural rules and undermine policy determinations.[4] This Court has already decided that England is the appropriate alternative forum and thus declines to superimpose U.S. procedural rules there.

Plaintiffs also ask this Court to require Defendants to satisfy any judgment in the United States that the English court may render. (Doc. No. 133, at 5). Like the other conditions, the

---

[4] The "discovery-related conditions" are conditions numbered 2-4 in Plaintiffs' Rule 59(e) motion (Doc. No. 133, at 4).

Plaintiffs did not previously request this condition, nor have they demonstrated any need for such a condition now. It would be premature for this Court to condition the terms of enforcement of a foreign law judgment in a case that has not even been filed. *Gonzalez v. Naviera Neptuno A.A.*, 832 F.2d 876, 882 (5th Cir. 1987) (suggesting that the district court consider a variety of conditions, including having defendants "formally agree to satisfy any final judgment rendered by the Peruvian court" but noting that the considerations "are only suggestions, and the District Court is free to . . . modify those suggested here"); *cf. Perez & Compania (Cataluna), S.A. v. M/V Mexico I*, 826 F.2d 1449, 1453 (5th Cir. 1987) (remanding for the district court's consideration of a condition requiring defendant to satisfy any final judgment because the district court had *previously* conditioned dismissal upon the retention of a letter of undertaking as security for plaintiff's claim) .

Further, Defendants' English law expert has explained that, were Plaintiffs' derivative claim to proceed in England, "the English High Court would have at its disposal all the remedies for breach of fiduciary duty which would be available had the claim been brought by BP Plc itself. Such remedies would include injunctive and/or declaratory relief as well as equitable compensation, damages and/or account of profits." (Declaration of Martin Moore, Doc. No. 91-2, Exhibit B, at ¶ 42). The English courts thus appear more than capable of handing down a judgment and overseeing its enforcement.

> 3. ***Plaintiffs have not articulated any specific statute of limitations concern***

In addition to Plaintiffs' proposed discovery-related conditions, Plaintiffs also ask this Court to have Defendants waive any limitations or laches-related defenses that may have arisen while the derivative litigation was pending in the United States. A district court must hesitate to dismiss a case under the forum non conveniens doctrine where the statute of limitations would

14

bar an action in the new forum. *See, e.g., Compania Naviera Joanna SA v. Koninklijke Boskalis Westminster NV*, 569 F.3d 189, 202 (4th Cir. 2009) ("[I]f the statute of limitations has expired in the alternative forum, the forum is not available, and the motion to dismiss based on *forum non conveniens* would not be appropriate."); *Bank of Credit and Commerce Int'l (Overseas) Ltd. State Bank of Pakistan*, 273 F.3d 241, 246 (2d Cir. 2001) ("[A]n adequate forum does not exist if a statute of limitations bars the bringing of the case in that forum."); *Chang v. Baxter Healthcare Corp.*, 599 F.3d 728, 736 (7th Cir. 2010) (explaining that if a plaintiff's case is time-barred in the alternative forum the case may not be dismissed on grounds of *forum non conveniens* "unless the defendant agrees to waive the statute of limitations").

The Ninth Circuit recently opined that "[t]he danger that the statute of limitations might serve to bar an action is one of the primary reasons" to limit a district court's discretion with respect to forum non conveniens analysis. *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1235 (9th Cir. 2011). However, waiver of the statute of limitations is only a necessary condition in a dismissal on forum non conveniens grounds where there is "a justifiable reason to doubt that a party will cooperate with the foreign forum." *Leetsch v. Freedman*, 260 F.3d 1100, 1104 (9th Cir. 2011); *see also Baris v. Sulpicio Lines, Inc.*, 932 F.2d 1540, 1551 (5th Cir. 1991). For example, the Ninth Circuit has expressed concern over a district court's failure to include a waiver of limitations condition where defendants intimated they could circumvent it. *Carijano*, 643 F.3d at 1234 (expressing suspicion where defendants acknowledged the statute of limitations was tolled pending appeal but "coyly add[ed] 'to the extent it had not already run'" in their stipulation).

Defendants have not expressed any intentions to raise a statute of limitations defense in this case. Plaintiffs have neither informed the Court of the relevant limitations period nor

15

articulated any specific concern related to that period. In fact, Plaintiffs' own expert suggests that procedural requirements, like the statute of limitations, should be "dictated by the 'lex fori' or rules of the jurisdiction where the action is pending" as opposed to the jurisdiction where a party is incorporated. (Declaration of Stuart Adair, Doc. No. 109-16, Exhibit 16, at ¶ 30). In support of this proposition, Plaintiffs' expert references an English case which construes "whether the shareholder has satisfied any procedural rules for bringing a derivative claim, for example by serving prior notice on the company" as an example of a "matter[] of procedural law for the lex fori." (*Id.*); *see also Sun Oil Co. v. Wortman*, 486 U.S. 717, 725 (1988) (noting that "limitations periods are procedural" such that a limitations could be expired in one jurisdiction and enforceable in another). Thus, it would appear that, even under Plaintiffs' own expert's construction, a precondition to filing suit—such as the relevant statute of limitations—is a matter best left to the "jurisdiction where the action is pending," *i.e.*, England. Just as it is inappropriate for this Court to prefix the outcome of anticipated discovery disputes, it is also inappropriate for the Court to referee statute of limitations issues when Plaintiffs have identified no concrete concern in connection with the limitations period.

In summary, Plaintiffs have given this Court no reason to believe that Defendants intend to intentionally circumvent jurisdiction in England. Plaintiffs have not pointed to any manifest error of law or fact or any intervening change in controlling law. Nor have Plaintiffs alerted the Court to any new evidence that would justify amending or altering the Order of Dismissal. The conditions Plaintiffs request are not appropriate merely because other courts—confronted with different parties, dissimilar claims, and distinct facts—have applied some mix of what Plaintiffs desire here. To impose additional conditions would contradict the Supreme Court's observation that forum non conveniens determinations have "repeatedly emphasized the need to retain

flexibility . . . [E]ach case turns on its facts." *Piper Aircraft Co. v. Reyno*, 454 U.S. 2325, 249 (1981).

The Court carefully considered the facts of this case in its decision to dismiss on forum non conveniens grounds. Plaintiffs assert no additional facts in connection with their Rule 59(e) motion. Because Plaintiffs have failed to point to any actual difficulty they face in pursuing their claims in England, this Court declines to impose further conditions on dismissal at this time. In addition, because two months have elapsed since this Court issued its order, there is no need to stay dismissal for the additional sixty days Plaintiffs request. Therefore, Derivative Plaintiffs' Opposed Motion, Pursuant to Federal Rule of Civil Procedure 59, to Alter or Amend the Court's Order Dated September 15, 2011 (Doc. No. 133) must be **DENIED**.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this the 23rd day of November, 2011.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE